Mason & Foard Co. v. Main Jellico Mountain Coal Co.

CASE 73—PETITION ORDINARY—OCTOBER 13.

# Mason & Foard Co. v. Main Jellico Mountain Coal Co.

### APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. CONSTITUTIONAL LAW—HIRING OF CONVICTS.—The Legislature has the power to let and hire the labor of convicts, and, whenever deemed necessary or expedient, to transfer them from one place of confinement in the State to another. Such a change is not the infliction of another or greater punishment than they were adjudged to suffer, and a statute authorizing the leasing of convict labor and the working of the convicts in mines, can not, therefore, be regarded as an *ex post facto* law.

2. SAME—CONSTRUCTION OF CONTRACT.—Although the appellant's contract of lease with the State did not, in express terms, authorize it to hire the convicts to labor in coal mines or on other public works mentioned in the statute, belonging to another than the lessee, yet it did not, in letter or spirit, interdict such hiring, and, therefore, appellant acquired that right under its contract.

3. ESTOPPEL.—But even if appellant has violated its contract with the State, the appellee, having received the full benefit of its contract with appellant, can not complain. The State is the only party having the right to complain.

BROWN, HUMPHREY & DAVIE AND WM. LINDSAY FOR APPELLANT.

1. It was within the scope of the powers of the president of the Main Jellico Mountain Coal Company to execute the contract and notes for convict labor sued on; and the directors and stockholders approved of those contracts, and enjoyed the benefit of them; and the company's plea of *non est factum* is, therefore, not sustained.

2. The legislative acts of 1880 and 1884, authorizing convicts to be leased to private persons to be worked on turnpikes, railroads, levees and mines, was enacted on the ground of humanity, to relieve the convicts from the horrors of the overcrowded penitentiary. (Acts 1380, vol. 1, pages 159-165; Acts 1884, vol. 1, page 173.)

3. The policy of this State for over fifty years has been to lease convicts to private individuals, and to allow the lessees to work them outside the walls of the Frankfort Penitentiary, on farms, gardens, railroads, turnpikes and mines. (Moorehead & Brown's Dig. Stat., 1315; Loughborough's Dig. Stat., 401, 483, 491; 2 Rev. Stat., 206, 207, 211;

Myers' Supp., 361, 363; Acts 1880, vol. 1, pages 159 and 165; Acts 1884, vol. 1, page 173; Acts 1886, vol. 1, page 213; General Statutes, page 1262.)

4. The judgment that a prisoner shall be confined to labor in the Penitentiary, does not mean only within the four walls at Frankfort. A penitentiary or prison is any place designated by law for the detention and punishment of prisoners; and it may be a stockade, coal mine, farm or other open place guarded, or a place bounded by mere imaginary lines. (Bouvier's Law Dictionary, titles "Prison" and "Gaol;" Petersdorff's Abridgment, vol. 14, pages 5 and 8; Bacon's Abr., vol. 8, 681; 2 Hawkins Pleas Cr., chap. 18, sec. 4; Butler v. Carleton, 1 Hammond, Ohio, 32; Luckey v. Branden, 1 Hammond, 49; Bonafice v. Walker, 2 Term R., 126; Peters v. Henry, 6 Johnson, 121; 26 Howard's Pr. R., 121; Brown v. People, 75 New York, 439.)

5. A statute authorizing convicts to be leased to private persons to be worked in mines is constitutional; and is not a change or increase of the convict's sentence; nor is it a cruel and unusual punishment; nor a legislative assumption of judicial functions. (Holland v. State, 1 Southern Reporter, 524; State v. McAuley, 15 California, 455; Ex Parte Higgins, 57 Miss., 824; Werner v. State, 44 Ark., 130; Conner v. Bankhead, 70 Ala., 140; In re Hartwell, 1 Lowell, 538; State v. Ewing, 55 Missouri, 101; Lark v. State, 55 Georgia, 435; Brown v. People, 75 New York, 439.)

6. The fact that a prisoner is sentenced to be confined at labor in a named prison, does not prevent the Legislature, in its discretion, from subsequently causing him to be removed to labor in another prison, at another place. (State v. McAuley, 15 Cal., 455; In re Hartwell, 1 Lowell, 538; Brown v. People, 75 New York, 439; Pember's Case, 1 Wharton, Pa., 436; Redill's Case, 1 Wharton, 436; Holland v. State, 1 Southern Reporter, 521.)

7. It is not necessary for the judgment of conviction to specify that a convict may be leased out for working in the mines. It is an implied part of each sentence. (Holland v. State, 1 Southern Reporter, 524; Gen. Stat., chap. 29, art. 1, sec. 21.)

8. It was lawful for the Legislature to delegate to the Commissioners of the Sinking Fund, as the ex officio directors of the Penitentiary, the power and duty of making leases of convict labor. (Moorehead & Brown, 1315; Loughborough, 483, 491; 2 Rev. Stat., 206, 207, 211; Myers' Supp., 361, 363; Gen. Stat., 1262; Kentucky River Nav. Co. v. Commissioners Sinking Fund, 12 Bush, 9; Commissioners Sinking Fund v. Green and Barren Rivers Nav. Co., 79 Ky., 76.)

9. As the lease to the Mason & Foard Company did not prohibit underletting, that company had the right to sublet the convict labor, to be worked in the mines of others. (Taylor's Land and Ten., section 426.)

10. The Legislature has, subsequent to this contract with the Main Jellico Mountain Coal Company, recognized it as a valid and existing contract; and this ratification puts the question of its legality at rest. (Welton v. Cobb, 21 Texas, 539; Acts 1886, vol. 1, page 213, sections 3, 7, 9, 11.)

11. The contract between the Mason & Foard Company and the Main Jellico Mountain Coal Company was not a subletting of the convicts; but under it the Mason & Foard Company was to remain in entire possession and control of them, guard them, and work them.

12. Even if the Mason & Foard Company had sublet the convicts to the Main Jellico Mountain Coal Company, and if such subletting were unauthorized and illegal, only the State or the convicts could complain of it; and the Main Jellico Mountain Coal Company having received the benefits, and the contract having been fully executed, the Main Jellico Mountain Coal Company will have to pay. (Marshall v. Donovan, 10 Bush, 691; Brooks v. Martin, 2 Wallace, 70.)

HARGIS & EASTIN FOR APPELLEE.

Brief not in record.

CHIEF JUSTICE LEWIS DELIVERED THE OPINION OF THE COURT.

This appeal is from a judgment pursuant to the verdict of a jury, rendered under a peremptory instruction, in three consolidated actions instituted by appellant against appellee.

The first is an action on two promissory notes; the second on an open account for labor and services performed under a contract between the parties dated June 30, 1885, the amount sued for being the balance left after deducting, besides other credits, the two notes mentioned that were given in part payment of the account; and the third upon an open account for like labor and services under a contract dated May 1, 1886.

The defenses set up and relied on in the answers of appellee, besides a general denial of the correctness of the accounts, are—1, a special plea of *non est fac-*

*tum;* 2, alleged fraudulent collusion between the person, at the time its president, and appellant in making the contracts; and 3, the illegality of the contracts.

There was evidence introduced which conduced to prove the alleged services were rendered by "Mason & Foard Company," and accepted and enjoyed by "the Main Jellico Mountain Coal Company," and that the contracts were made by the president of the latter in good faith and with the knowledge and assent of its directors and stockholders. Consequently, the only apparent ground for the peremptory instruction to the jury to find for the defendant, is the supposed illegality of the two contracts upon which the plaintiff based its right to recover.

By those contracts, which do not differ substantially from each other, except as to the mode of determining the amount of wages to be paid, Mason & Foard Company, claiming to be lessee of the Kentucky Penitentiary, in virtue of a contract made April 27th, 1885, with the Commonwealth, through the Commissioners of the Sinking Fund, agreed for the consideration stated therein to hire and furnish for specified periods of time a certain number of able-bodied convict men from the penitentiary, to labor in the coal mines of the Main Jellico Mountain Coal Company, situated in Whitley county, and, without cost to the latter, to guard and control the convicts while inside as well as outside the mines, assume all risk of their escape, and to maintain, care for and support them, erecting buildings necessary for the purpose.

By the contract of April 27, 1885, the Common-

wealth of Kentucky, in terms, let and hired to Mason & Foard Company the labor of the convicts who were then, or might be, in the penitentiary, for the period of four years, and agreed the lessee might employ all the males able to perform such labor, except those convicted of certain enumerated crimes, and such as were then employed upon the branch penitentiary, "upon public works in Kentucky, such as the construction and improvement of railroads, canals, water-ways, levees and *mining*," upon the condition, however, that whenever there should be provided sufficient rooms and accommodations for them within the walls of the penitentiary at Frankfort, or any branch penitentiary thereafter erected, the Commissioners of the Sinking Fund might require the return to the penitentiary of all convicts employed outside, upon giving six months' notice to the contractors.

On its part the company agreed to pay into the Treasury, quarterly, a stipulated net sum, and to acquit the Commonwealth of all expense on account of officers, guards and inspectors of the penitentiary; to provide for the convicts as comfortably, in sickness and in health, as might be consistent with good discipline, and to faithfully conform to all rules and regulations prescribed by the Commissioners of the Sinking Fund respecting the labor, diet, clothing, care, discipline and safe-keeping of the convicts. For the performance of its covenants the lessee executed a bond, which was accepted by the Commissioners of the Sinking Fund.

The statute authorizing that contract was approved May 10, 1884, see Acts 1883-'4, volume 1, 173, and

section 1 thereof is as follows: "That section 6 of an act, entitled 'An act to provide for the relief of the Penitentiary,' approved May 3, 1880, be amended so as to read as follows: 'That the Commissioners of the Sinking Fund are hereby authorized and directed to let and hire the labor of all convicts who are or may be in the Kentucky Penitentiary, except those who are now prohibited by law from working out, to be employed upon public works within this State, such as the construction and improvement of railroads, canals, water-ways and levees, and *in mining*. And all convicts so hired out shall be confined at night, and at all times when not at work, in houses or stockades built or rented for the purpose: *Provided*, That no one convicted of murder, rape, attempted rape, or arson, or who has a longer period than five years to serve, shall be let or hired; and no convict shall be worked within the corporate limits of any city or town, nor quartered within two miles thereof, nor within one-fourth of a mile of a private residence, unless by written consent of the resident: *Provided*, That the provision in regard to quartering convicts shall not apply to those engaged in mining.'"

The Commissioners of the Sinking Fund, when they made the lease to Mason & Foard Company, were, by express enactment, "*ex officio* Directors of the Kentucky Penitentiary," and invested with authority to let and hire the labor of the convicts, except those employed on the branch penitentiary, in their discretion, to one company, as they did do, or to more than one company or individuals. And in making that contract they seem to have observed every condition and

complied with every requirement of the statute on the subject. And, in our opinion, according to a fair construction, the lessee thus acquired the right to make and carry out the two contracts with the Main Jellico Mountain Coal Company, which it is seeking in these actions to enforce. For, although the contract of lease did not in express terms authorize, it did not in letter or spirit interdict, the hiring of convicts to labor in coal mines, or on other public works mentioned in the statute belonging to another than the lessee.

But as the Main Jellico Mountain Coal Company has received the full benefit of its two contracts with the Mason & Foard Company, it does not seem to us a legitimate subject of inquiry in these cases, whether the latter had or had not the right to make them. For the Commonwealth, being the only party to the contract of lease, can alone complain of its violation.

It thus results, that if the act of May 10, 1884, in strict conformity to which the lease was made, be constitutional, the two contracts between the parties to these actions are valid and enforceable, otherwise not.

If the act is invalid at all, it is so because it deprives the convicts of some right guaranteed, or inflicts upon them some wrong forbidden, by the Constitution. But in deciding the question it should, to prevent confusion, be kept in view that a convict is not placed in the penitentiary in virtue of a contract mutually binding on him and the Commonwealth, and for a violation of which he can claim redress, but under a sentence for crime that for the time not only deprives him of liberty, but renders him civilly dead.

The single inquiry then is, whether the act is an

*ex post facto* law in the sense that it authorizes the infliction upon each convict another and greater punishment than he was adjudged to suffer.

By section 21, article 1, chapter 29, General Statutes, it is provided that persons sentenced to punishment by confinement in the penitentiary shall be kept at hard labor and solitary confinement, and such is the judgment of the court in each case. Consequently the effect of a conviction for felony and sentence to the penitentiary, according to the law existing when the act of May 10, 1884, was passed, and as it always has been in this State, was to effectually restrain the liberty of the person, and though kept at hard labor, to withhold from him the fruits of his labor. It, therefore, makes no difference to the convict whether he be kept under guard at hard labor within the walls of the penitentiary at Frankfort, or at coal mines. Nor does the change of place operate to change in character or degree his punishment, for wherever he may be the sentence of the law is inexorable and the same, that he be kept at hard labor in solitary confinement.

In the case of California v. McAuley, 15 Cal., 455, a question the same as the one before us arose, and the court used this language:

"The objection to the constitutionality of the act that it authorizes the transfer of the convicts to private individuals, and the leasing of convicts, is untenable. Power over the whole subject of punishment for crime is vested in the Legislature. The only limitation upon its execution is the inhibition against the infliction of cruel and unusual punishments, which are held to mean those of a barbarous character and

unknown to the common law. The first object of punishment is the protection of society. The reformation of prisoners is only subsidiary and incidental to this. Their conviction has subjected them to the situation of involuntary servitude."

The same question has been before courts of various other States, and by none of them, so far as we have seen, has the Legislature been denied the power to let and hire the labor of convicts, and, whenever deemed necessary or expedient, to transfer them from one place of confinement in the State to another.

The location of a penitentiary, which is simply a building for confinement and safe-keeping of convicts, or of more than one, and whether they shall be placed in the custody of a lessee, who hires their labor from the State, or in that of a warden, or the two systems shall be combined, are questions of policy which the Legislature has full power to regulate by statute, and with which the court can not interfere.

To deny the power might cause not only serious loss to the State, but calamitous consequences to the convicts themselves. For, as indicated by its title, the act of March 3, 1880, heretofore mentioned, was passed for the purpose of removing some of the convicts from the penitentiary at Frankfort, which was overcrowded, to work on railroads, canals, etc., though it was not until the act of May 10, 1884, that authority was given to work them in mines.

As the convicts were kept at hard labor, controlled, guarded and cared for at the mines of appellee as if they had been in the penitentiary at Frankfort, the place of their confinement, was, therefore, essentially and

in legal contemplation a penitentiary. Consequently
there was not, nor could be, inflicted under the act of
May 10, 1884, different and greater punishment than
they were sentenced to receive, and it must be held
constitutional. And it follows the lower court erred
in giving the peremptory instruction, and the judg-
ment must be reversed for a new trial and proceed-
ings consistent with this opinion.