# Reliance Manufacturing Company, et al. v. Board of Prison Commissioners.

(Decided November 19, 1914.)

## Appeal from Franklin Circuit Court.

1.   Prison Commissioners—Powers of Board of—Convict Labor.— Under section 3807 of the Kentucky Statutes the Board of Prison

Commissioners has authority to hire out the convict labor, and is invested with large authority to enable it to exercise the power conferred.

2. Prison Commissioners—Hiring Convict Labor—Power of Board to Renew and Consent to Assignment of Contract.—Under the statute the Board of Prison Commissioners has the power to renew the contract for a term of years when it is so stipulated in the contract, and also the power to consent to the assignment by the contractor of its contract, and the assignee has the same right to demand a renewal of the contract as the original contractor would have had.

3. Public Policy—Convict Labor.—As the Legislature of the State has for many years continuously and by the enactment from time to time of various laws authorized its boards having charge of the penitentiaries of the State to lease the convict labor, and this legislative authority was conferred by the Constitution, these legislative enactments manifest that the public policy of the State is in favor of hiring out the convicts, and the courts are not at liberty to interfere with the validity of contracts made by the Board of Prison Commissioners upon sentimental or humane grounds. The question of the control and disposition of the convict labor is purely an administrative function lodged in the law making department of the State.

4. Agents—Public Agents and Boards Created by Statute—Powers of. —The public agents and boards created by statute are limited by the provisions of the statute creating them. They have no right to exceed the powers conferred by the statute or to prejudice the rights of the State by acts not fairly authorized by the statute. There must be in every instance authority, express or implied, for the acts of the board or agent found in the statute.

5. State—Suit Against—When Agent of State May Be Sued.—Section 231 of the Constitution provides, in substance, that the State shall not be sued without legislative permission, but agents or boards created by the State, whether quasi corporations with the right to sue and be sued or not, may be compelled to do something that the State authorizes them to do, or be restrained from doing things that the State does not authorize them to do, when it is necessary to compel or restrain, as the case may be, to prevent injury or injustice to the complaining party.

6. State—Agents of the State—Public Agents—Suit Against.—Public agents of the State ought not to be allowed to perpetrate a wrong or commit a breach of contract and prevent the injured party from seeking redress in court by shielding themselves behind the barrier that the State, upon grounds of public policy, has erected for its protection against suits, unless the suit falls plainly within the prohibited class. The Commonwealth does not desire to

wrong any of its citizens or any one else. It wants, as do all well-governed states, to do what is right.

HELM BRUCE, BRUCE & BULLITT, W. W. DAVIESS and H. L. STERN for appellants.

JAMES GARNETT, Attorney General, and CHAS. H. MORRIS, Assistant Attorney General, for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The Board of Prison Commissioners have control of the penitentiaries of the State and convict labor therein confined. By section 3807 of the Kentucky Statutes it is provided that "it shall be the duty of the commissioners to hire out to a contractor or contractors all the convicts able to perform manual labor, to be worked within the walls of the penitentiaries. Such hiring shall be to the highest and best bidder, after due advertising, and the labor in both penitentiaries may be hired to one person, or the labor in whole or in part in each penitentiary may be hired to different contractors. * * * The price agreed to be paid shall be paid in monthly or quarterly installments by the contractor as the commissioners may determine, and it is hereby made a condition precedent to the contract that on failure of lessee or lessees to pay any installment within one month after same is due, the commissioners may elect to declare the lease forfeited for non-payment of rent, giving the lessees thirty days' notice in writing declaring a forfeiture thereof, and the commissioners may take possession without further notice. The term for which said convicts may be hired shall not be more than four years, with the privilege of renewal, and the contractor shall obligate himself to faithfully conform to all the rules and regulations that may be established by the commissioners touching all sanitary and police matters, and for the government of the prison. Upon the execution of the bond as above required, and the acceptance of the bid, the contractor shall be entitled to the labor of said convicts, the various shops and power therein belonging to the State. But if, after due advertisement as above set forth, the commissioners fail to secure such a bid as is acceptable to them, then they may hire the convicts to a contractor or contractors by private contract, and such contract, when made, shall be consummated in all respects, and shall contain the same stipu-

lations and provisions as are required in this section for a contractor who hires said convicts by public bid."

Under the power thus conferred, the board, in October, 1908, leased to William Goodbar, a specified number of the convicts confined in the Eddyville Penitentiary. The contract stipulated that the Commonwealth should clothe and feed and keep under discipline the convicts so leased, and further provided that "the discipline of the entire penitentiary shall be under the control of the State authorities, and all employes of said second party, Goodbar, shall be governed by the rules and regulations of the penitentiary which may be promulgated from time to time by the authorities representing the State."

It was further stipulated in the contract that "this contract is to be continued in force for four years from April 19, 1909, then at the option of the second party, and provided the party of the second part gives three months' notice in writing of his intention to renew this contract before the expiration of the contract, a new contract shall be entered into for a period of four years at the same price and upon the same terms as in this contract."

It was further stipulated that "it is distinctly understood that the party of the second part shall not sublet any of the labor of the 175 convicts hereby leased without consent of the party of the first part."

Some time after the execution of this contract Goodbar assigned the benefit of the contract to one J. W. McMullen, and soon thereafter McMullen assigned the contract and all benefits arising thereunder to the Sterling Manufacturing Company, and thereafter the Sterling Manufacturing Company assigned the contract to the present appellant.

Each of these assignments was consented to in writing by the Board of Prison Commissioners, and the consent to the assignment by the Sterling Manufacturing Company to the Reliance Manufacturing Company was as follows: "Said Commonwealth further consents to the transfer and assignment by said Sterling Manufacturing Company to the Reliance Manufacturing Company, a corporation, of all rights of said Sterling Manufacturing Company under the William M. Goodbar contract, dated October 16, 1908, and that said Reliance Manufacturing Company enjoy all of the rights of said Sterling Manufacturing Company upon giving to said Commonwealth the bond required under said Goodbar

contract and described in the previous written consent given by said Commonwealth, dated December 7, 1910.''

The various assignees of Goodbar, including the Reliance Manufacturing Company, complied with all the rules and regulations of the Board of Prison Commissioners and executed all bonds required. In short, they took the place of Goodbar and discharged all of the obligations he assumed by virtue of the contract with him.

In January, 1913, the Reliance Manufacturing Company exercised its option to renew the contract and gave to the Board of Commissioners written notice of its desire, as provided for in the second clause of the Goodbar contract. Upon receiving this notice, or soon thereafter, the Board notified the Reliance Manufacturing Company that it declined to renew the contract, and thereupon this suit was brought asking that the Board of Commissioners be restrained from ousting the Reliance Company from the prison or from failing or refusing to furnish it the labor stipulated in the contract; and it was further prayed that the Board be compelled to renew the contract with the Reliance Manufacturing Company for an additional period of four years from April 19, 1913.

There being really no issue of fact involved in the case, it was submitted upon the pleadings, exhibits and some evidence that had been taken, and judgment rendered dismissing the petition upon the ground, as stated in the judgment, that the several assignments of the contract were void as against the public policy of the State, and this being so, the contract with the Reliance Manufacturing Company should not have been renewed, as there was no obligation upon the part of the board to renew it.

It is the contention of counsel for the Reliance Company that as the Board of Prison Commissioners had the power and did consent to the several assignments of the Goodbar contract, the Reliance Company occupies the same position as would Goodbar if he were asking a renewal of his contract; and further insisted that as the contract as well as the statute under which it was made stipulated that it should be renewed for a term of four years at the election of the lessee, the Board of Prison Commissioners had no right or authority to refuse to renew the contract, and should have been compelled to do so by the processes of the court.

In behalf of the Commonwealth the argument is made

that the Prison Commissioners did not have the power
to consent to the various assignments of the Goodbar
contract, and therefore the assignments conferred no
rights on the assignees, and besides were void as con-
trary to public policy. And, further, that this suit can
not be maintained against the board, as it is in fact a
suit against the Commonwealth. It is also maintained
that the stipulation in the contract for its renewal is
not binding on the board, and this being so, the board
cannot be compelled to renew it.

That the board had authority to make the contract
with Goodbar is not disputed, nor could it be. This
contract was made under express legislative sanction,
and that the Legislature had power to grant this author-
ity must be conceded, as the power is conferred by sec-
tions 253 and 254 of the Constitution, providing, in
substance, that convicts shall be confined at labor within
the walls of the penitentiaries and the General Assembly
shall not have power to authorize their employment
elsewhere except upon the public works of the Common-
wealth, or in case of pestilence or the destruction of
the prison building. These sections further provide for
the leasing of the convict labor with the condition that
the Commonwealth shall maintain control of the disci-
pline, and provide for all supplies and for the sanitary
condition of the convicts.

The question is, did the board have authority to con-
sent to the assignments, and were these assignments
against public policy?

We think this question really resolves itself into a
question of power rather than public policy. If the
board had the power to approve the assignments, and
in the exercise of this power created contract rights by
virtue of the assignments, these contract rights cannot
be disturbed or upset upon grounds of public policy.
Indeed, we think the attack on these assignments on the
ground that they were against public policy is not well
founded. The Legislature of the State has for many
years continuously and by the enactment from time to
time of various laws authorized its boards having charge
of the penitentiaries of the State to lease the convict
labor, and these laws were in force when the Goodbar
contract was made, when each of the assignments were
made, when the renewal by the Reliance Company was
sought, and when the judgment appealed from was ren-
dered, as well as now. This authority on the part of the

Legislature was, as we have seen, conferred by the Constitution, and so whatever may be the future public policy of the State in regard to leasing convict labor, or whatever public sentiment there may exist in opposition to this method of disposing of the time and labor of convicts, certain it is that for many years past it has been the public policy of the State, as expressed in its Constitution and legislative acts on the subject, to lease to private persons the labor of all the convicts confined in the State penitentiaries.

It may be as argued by counsel for the State that the lives and labor of human beings should not be made the subject of involuntary barter and sale, but, however this may be, it must be conceded that the management and control of the penal institutions of the State, and of the labor of the convicts therein confined, is clearly an administrative and governmental function that has been confided to the law-making power, and to this power alone, or to the people by constitutional amendments, redress must be sought for the evils of the present method of dealing with convict labor, and as the disposition of this matter rests entirely with the people and the Legislature of the State, the courts are not at liberty for sentimental or humane reasons to say that it shall not be continued.

Returning now to the question of the power of the board to authorize the assignments of the Goodbar contract, it is perhaps well to keep in mind the fact that the assignments of these contracts did not prejudice the Commonwealth, nor did they affect in any manner or form the personal rights or privileges or labor of the convicts covered by the contract. The Board of Prison Commissioners had precisely the same power of control and direction over the subject-matter of the contract after the assignments as they had before. In other words, the assignee assumed all the duties and liabilities imposed by law as well as by contract upon Goodbar.

In authorizing and consenting to these assignments the board did not violate any express or implied statutory provision. The Legislature conferred on the board, in section 3807, heretofore quoted, the most ample power in reference to the leasing of convict labor. In view of this fact, and the further fact that the rights of the convicts and the authority of the board were exactly the same under the assignments as under the original contract, it would seem that no sound objection can be urged

against the power of the board to consent to the assignments. Of course, the powers of public agents and boards created by statute are limited by the directions of the statute creating them. They have no right to exceed the powers conferred by the statute or to prejudice the rights of the State by acts not fairly authorized by the statute. There must be in every instance authority, express or implied, for the acts of the board or agent found in the statute: Throop on Public Officials, Sec. 551; Cheeney v. Inhabitants of Brookfield, 60 Mo., 53; Tamm v. Lavalle, 92 Ill., 263; Dement v. Rokker, 126 Ill., 174; Parcel v. Barnes, 25 Ark., 263; Sutro v. Pettit, 74 Cal., 336; State v. Hastings, 10 Wis., 522.

The principle of law we have stated is uniformly observed, and we have no disposition to modify or depart from it in this case. Its observance is necessary for the protection of the State and the people and to confine within the prescribed limits the activities of public agents who might, if not restrained, be inclined to exercise discretion or authority not found in the statute.

But when boards, as in this case, have been invested with the power to lease the convict labor, and no sound reason exists why they should not be permitted to consent to the assignment of the lease, we think the right to consent to an assignment is as fully conferred as the right to make the contract. There being no limitation upon the right to make the contract within the directions of the statute, we do not see what obstacle there can be in the way of the board consenting to an assignment of the contract when the rights of the State and the convicts are as carefully conserved as they were by the terms of the original contract.

A question like this was before the court in Mason & Foard Company v. Main Jellico Mountain Coal Co., 87 Ky., 467. In that case, as appears from the opinion, the Mason & Foard Company were the lessees of the convict labor of the State, and as such lessees it hired to the Main Jellico Coal Company certain of the leased convicts. The coal company failed to pay the contract price for the hire of the convicts, and thereafter the Mason & Foard Company brought a suit to recover on the contract. The coal company defended upon the ground that the contract was illegal and unauthorized. In answer to this defense, the court said:

"The Commissioners of the Sinking Fund, when they made the lease to Mason & Foard Company, were by ex-

press enactment, 'ex-officio Directors of the Kentucky Penitentiary,' and invested with authority to let and hire the labor of the convicts, except those employed on the branch penitentiary, in their discretion, to one company, as they did do, or to more than one company or individuals. And in making that contract they seem to have observed every condition and complied with every requirement of the statute on the subject. And, in our opinion, according to a fair construction, the lessee thus acquired the right to make and carry out the two contracts with the Main Jellico Mountain Coal Company, which it is seeking in these actions to enforce. For, although the contract of lease did not in express terms authorize, it did not in letter or spirit interdict, the hiring of convicts to labor in coal mines, or on other public works mentioned in the statute belonging to another than the lessee."

It is also worth while to notice that in that case it did not appear that the Board of Sinking Fund Commissioners consented to the sub-hiring of the convicts to the coal company. To the same effect is Hall v. O'Neil Turpentine Co., 56 Fla., 324.

Did the Board of Commissioners exceed their authority in stipulating in the Goodbar contract that at the expiration of four years from its date Goodbar should have the election to renew the contract for another period of four years at the same price and upon the same terms as provided in the contract?

The statute, we think, expressly granted to the board authority to stipulate for the renewal of the contract. The words in section 3807, "The term for which said convicts may be hired shall not be more than four years, with the privilege of renewal," clearly gave to the board the right to provide that the lessee should have the privilege of renewing the contract for another term of four years. The words are not susceptible of any other fair meaning. If they do not mean this, they have no meaning at all. There is no reason that can be assigned why this clause in the statute, or the stipulation in the contract made pursuant to it, should not be construed by the same rules that control the construction of other statutory provisions and other contracts, and it is elementary that in the construction of statutes and contracts the intention of the Legislature or the parties to the contract is to be ascertained if this can be done from

a reading of the statute or contract, and that when ascertained it should be carried out.

Now when the Legislature provided that the convicts should not be hired for more than four years, with the privilege of renewal, there seems no escape from the construction that the privilege of renewal meant a renewal of all the terms and conditions of the contract. Nothing substantial could be added to or subtracted from the original contract. It also follows from what we have said about the assignment of the contract that the assignee had all the rights conferred by the contract on Goodbar, and among these was the right of renewal.

We are also inclined to the view that this right of election to renew was with the contractor, but it is not necessary to express, in this case, a decided opinion upon this question, because the right of renewal was consented to by both parties, and, according to the views we have of the matter, both parties had the right to consent to the renewal.

The remaining question is raised by the assertion of counsel for the Commonwealth that this is really a suit against the Commonwealth of Kentucky, and therefore could not be maintained without its consent.

If this were in fact a suit against the Commonwealth, section 231 of the Constitution, providing that the General Assembly may by law direct in what manner and in what courts suits may be brought against the Commonwealth, would present an insuperable obstacle in the way of its prosecution, as its institution was not authorized by the General Assembly.

But is this a suit against the Commonwealth in the meaning of the Constitution or in the meaning of the general rule forbidding suits against the State without the consent of the State?

Many cases have been written on this subject, and a number of the leading ones have been called to our attention by counsel as supporting their respective contentions. The line of suability and non-suability in many of these cases is very obscure, and it may be admitted that it is often difficult to make a substantial distinction between cases in which the right to sue has been allowed and cases in which it has been denied. Generally, however, the way is endeavored to be simplified by the facts of each particular case, and the distinctions as a rule turn on the construction given the facts.

Looking now to the facts of this case, we find that the Board of Prison Commissioners, although not designated as a corporation, or clothed with the right to sue and be sued, was, nevertheless, an agency of the State, invested with all the power necessary to enable it to competently discharge the duties reposed in it by the statute. As we have seen, it had the power to make the contract, to consent to its assignment, and the contractor had the right to demand its renewal. So that the only ground left upon which the board can defend its refusal is that being an agency of the State it cannot be compelled to do that which it was authorized to do and that which it agreed to do. If the board cannot be compelled to renew this contract, then one of the parties to the contract is denied, without any fault or wrongdoing or breaches, the right to compel the other party to perform his part of the contract, and, as appears in this case, this denial would operate to permit the board to commit what under ordinary conditions would be a trespass by forcibly removing from the prison walls the machinery and other things placed there by the contractors for the purpose of enabling them to enjoy the benefits of their contract.

Cases like this present strong reasons why the courts should afford relief unless the right to do so is unmistakably withheld. Public agents of the State ought not to be allowed to perpetrate a wrong or commit a breach of contract and prevent the injured party from seeking redress in the courts by shielding themselves behind the barrier that the State upon grounds of public policy has erected for its protection against suits, unless the suit plainly falls within the prohibited class. The Commonwealth of Kentucky does not desire to wrong any of its citizens or any one else. It wants, as do all well-governed states, to do what is right.

Therefore, to prevent the injustice and wrong that in many cases would result if people dealing with public agents were left without remedy, however just their demands might be, this court has announced in many cases that public boards and agents of the State might be sued, although the acts about which the suit arose were performed by them in their capacity as agents of the State. The correct rule, and the one supported by authority, is that a public agent, whether it be styled a body corporate with the power to sue and be sued, or be a board or an individual with certain powers, may

be sued by a private citizen to restrain the commission of a contemplated injury or wrong or compelled, as any other private citizen might be, to perform acts essential to protect the property or contract rights of individuals having dealings with the agent, when the suit, whatever its nature may be, will not do more than restrain the commission of some wrong or compel the performance of some duty by the agent; or, to put it in another way, when the suit directly concerns some act of the board or agent, whether of omission or commission, that is not expressly authorized by the State. An example of this class of cases is Herr v. Central Kentucky Lunatic Asylum, 97 Ky., 458. Herr brought a suit against the Central Kentucky Lunatic Asylum asking an injunction to prevent the asylum authorities from committing acts that would injure his property. The lower court dismissed the suit upon the ground that the defendant was an arm of the State and could not be sued without its authority, but this court said:

"But if officers or agents of the State invade private rights in a mode not authorized by the statute under which they claim to act, or if such statute is invalid, unquestionably the person injured has at least a preventive remedy, although the State may be affected by the proceeding, yet not a party to it. * * * For exemption of the State from suit without its consent was intended for its own protection; not at all to enable agents or officers to do with impunity injury to private rights." To the same effect is Hauns v. Central Ky. Lunatic Asylum, 103 Ky., 562.

In Gross v. Ky. Board of Managers, 105 Ky., 840, it appears from the opinion that the Board of Managers of the World's Columbian Exposition was created by an act of the Legislature. This board made a contract with Gross to conduct a restaurant. On account of some differences growing out of contract rights between Gross and the board, he brought suit against it for damages, and this suit was dismissed by the lower court upon the ground that the board being an agent of the State, could not be sued; but this court, in holding that a suit would lie, said:

"But it cannot be presumed that it was contemplated that people who dealt with this board would have no one to look to for the enforcement of their just claims."

It is very true that in the Gross case considerable importance appears to have been attached by the court

to the fact that the board was a *quasi* corporation, authorized to sue and be sued, but this circumstance we do not regard as of controlling importance. If a corporate agency of the State can be sued, there is no reason why any other agency of the State cannot be sued. The right to sue cannot rest alone upon the circumstance that the agent has been created a corporation by the State. The real question is, is the suit against the State, or is it against an agency of the State to compel the agency to do something that the State authorized it to do or to restrain it from doing something that the State did not authorize it to do?

Other cases where suits against agents of the State were authorized by this court to be maintained are: Illinois Life Ins. Co. v. Prewitt, 123 Ky., 36; Baldwin v. Com., 11 Bush, 417.

In Rolston v. Crittenden, 120 U. S., 390, 30 L. Ed., 721, the Supreme Court, in answer to the objection that the suit was against the State and therefore could not be maintained, said: "Here the suit is to get a State officer to do what a statute requires of him. The litigation is with the officer, not the State. The law makes it his duty to assign the liens in question to the trustees when they make a certain payment. The trustees claim they have made this payment. The officer says they have not, and there is no controversy about his duty if they have. The inly inquiry is, therefore, as to the fact of a payment according to the requirements of the law." To the same effect are: United States v. Lee, 106 U. S., 196, 27 L. Ed., 171; Board of Liquidation v. McComb, 92 U. S., 531, 23 L. Ed., 622; Poindexter v. Greenhow, 114 U. S., 270, 29 L. Ed., 185.

Many other authorities might be referred to, but these are sufficient, we think, to illustrate the rule that a suit will lie against the agents of the State to compel them to do something that the State authorizes them to do or restrain them from doing something that the State does not authorize them to do, when it is necessary to compel or restrain, as the case may be, to prevent injury or injustice to the complaining party.

And this case, we think, falls directly within this principle of suability. Here the board was authorized by the State. to do the thing it was requested to do by the lessee, and it refused to do it, not for want of power on its part, but because, in its judgment, as we may

assume, it was against public policy to do the thing requested.

Having the views expressed of the questions involved in this case, it follows that the judgment appealed from must be reversed, with directions to enter a judgment granting the relief prayed for.

Whole court sitting.