# Board of Councilmen City of Frankfort v. State Highway Commission et al.

(Decided June 20, 1930.)

(As Modified on Denial of Rehearing December 19, 1930.)

254

F. M. DAILEY for appellant.

J. W. CAMMACK, Attornew General, and CLIFFORD E. SMITH, Assistant Attorney General, for appellees.

OPINION OF THE COURT BY COMMISSIONER STANLEY—
Reversing.

This suit is in the nature of a mandamus proceeding to compel the state highway commission and the members thereof to perform a contract which was entered into between the commission and the board of councilmen of the city of Frankfort on July 23, 1923. By the contract the commission agreed to take over the reconstruction, according to its plans and specifications, of 1.972 miles of certain streets in Frankfort, constituting state project No. 17a, Franklin county (but now known as U. S. Highway No. 60), and to maintain same. The contract for the work was to be awarded by the commission subject to the approval of the council. The cost was to be assessed by the city against the abutting property and the Interurban Trunk Railway Company (succeeded by the Kentucky Traction & Terminal Company). The commission firmly bound itself to pay one-half of the cost of construction, which was to be credited on the warrants of the property owners in a manner set out in the contract. It further bound itself to maintain thereafter the streets as a part of the public highways of the state. No question is raised as to the legality of the procedure taken by the city. The authority of the commission to make the contract is to be found in section 8, of chapter 17, Acts of 1920, establishing the highway commission (published as section 4356t-8, in the 1922 edition of the Statutes), which is as follows:

"When any primary road herein designated must pass through a city or town, the state highway commission is hereby empowered to enter into a contract with such city or town for the construction of

such road if the road through the city or town is to be different from the road constructed outside of the city or town, but if the road is the same the cost thereof shall be paid as is the cost of other roads designated herein. In the event it is necessary to construct a road or street at a greater cost than is paid for construction of a like lineal mileage outside of the city or town, such city or town must pay the additional cost of construction, and the details shall be agreed upon between such city or town and said state highway commission.''

This section was construed in Wickliffe's Executors v. Smith, 225 Ky. 796, 10 S. W. (2d) 291; and Perry County v. Townes, 228 Ky. 608, 15 S. W. (2d) 521. It may be said in passing that that law was changed by chapter 178 of the Acts of 1928, but the modification could not affect the contract rights here involved.

The petition of the council against the commission, the Irvine Construction Company, the Traction Company, and Leslie W. Morris, who owns abutting property, was filed November 24, 1924. It asked that the commission be required to carry out the terms of its contract, and for a declaration of rights of the plaintiff and the three other defendants. It was therein shown that pursuant to the contract the commission had received as the lowest and best bid one of the Irvine Construction Company in the sum of $215,052.15, but it does not appear that any contract was entered into with that company.

A special demurrer of the commission on the ground that the action was against the commonwealth without its consent was overruled and an answer filed. The members of the commission were then individually made parties by amendments. The answer set up various defenses, including a denial of the right to maintain the suit; that the contract was ultra vires; and that it had been canceled by order of the commission because of the limitations placed upon it by this court in the case of Billeter & Wiley v. State Highway Commission, decided May 6, 1924, reported in 203 Ky. 15, 261 S. W. 855. Several demurrers and motions were passed on by the court from time to time, and on January 17, 1929, an amended petition was filed alleging that since the filing of the original petition the streets had become in bad repair, and

because of the necessity of maintaining them in a reasonably safe condition and the refusal of the commission to perform its contracts, the city, by proper ordinances and resolutions, had caused them to be constructed at the expense of the city and abutting property holders at a cost of $103,072.46. A list of the property owners, with the amount paid by each, was filed as an exhibit. It is stated that the city was suing in its corporate capacity and for the use and benefit of the abutting property holders and all of its citizens. It prayed judgment against the commission for one-half of the cost of construction, to wit, $51,536.23, which it is averred should be prorated among those entitled to it. The amended petition further asked that the commission be required to take over and maintain the streets involved.

The court sustained a special demurrer to the petition as amended, on the ground that the suit was in effect one against the commonwealth without its consent, and the petition was dismissed. Only that action of the trial court is before us.

The immunity of the commonwealth as the sovereign from suit without legislative consent is absolute and unqualified. The state highway commission is an agency of the commonwealth and not a separate corporate body. Section 231 of the Constitution provides that the General Assembly may direct in what manner and in what courts suits against the commonwealth may be sustained. Under that section may be found references to numerous cases construing this organic principle, and we shall not here enter upon the treatment of that subject generally, but confine ourselves to authorities having specific application.

In the recent case of Taylor v. Westerfield, 233 Ky. 619, 26 S. W. (2d) 557, 69 A. L. R. 482, the sound reasons for exempting the state and its agencies from liability for damages either in tort or on contract are given and the doctrine of their immunity reaffirmed. But as to an independent contractor who is engaged in road construction and who may be guilty of negligence the rule was changed and several cases were overruled.

In Hunt-Forbes Construction Company v. Robinson, 227 Ky. 138, 12 S. W. (2d) 303, the general rule in this state is given as being that a suit for damages may not be maintained against a contractor doing work under and in accordance with a contract with the state high-

way commission in the absence of negligence. This on the theory that the contractor is but an agent of the commission, and it would be in effect a suit against the commonwealth.

B. B. Wilson & Co. v. Van Diver, 230 Ky. 27, 18 S. W. (2d) 308, was a suit which involved the question of making the state highway commission a garnishee in an action against one it owed under a contract. It was held that the commission is not a body corporate and that it was the state which owed the money sought to be attached, and so far as the attachment was concerned it was in reality a suit against the state and could not be maintained. Of like character is Looney v. Stryker, 31 N. M. 557, 249 P. 112, 50 A. L. R. 1404.

However, it does not seem to us that this case is to be brought within the rules affirmed in those cases. It is not a suit for damages or, strictly speaking, to collect a debt. It is a suit to compel the officers of the state to perform their undertaking made in behalf of the state under its direct authority. The rule that suits may not be maintained against officers or agencies who are but nominal parties where the state is the real party in interest does not apply where the suit is instituted against the agency or officer to compel performance of a duty required by statute. 25 R. C. L. 414. An action against state officers to compel them by mandamus or other similar process to perform official duties of a purely ministerial nature, involving no discretion as to the use of political or governmental power, is not a suit against the state and may be maintained without its consent. White Eagle Oil & Refining Company v. Gunderson, Governor, 48 S. D. 608, 205 N. W. 614, 43 A. L. R. 397. The commission had exercised its authorized discretion when it made the contract. This principle was applied in State ex rel. v. Toole, Governor, 26 Mont. 22, 66 P. 496, 498, 55 L. R. A. 644, 91 Am. St. Rep. 386, where a board, composed of the Governor, Attorney General, and secretary of state, and constituting a "State Furnishing Board" had, because of a protest received from a labor union, refused to execute a contract after legally making an award for the purchase of supplies and furniture for the capitol. Said the court:

> "But the present proceeding is not, in effect, an action or proceeding against the state. If the allegations of the petition are true, the proposal of

the plaintiff was regularly accepted, and the contract let to it as the lowest responsible bidder, after a compliance with all the statutory requirements. The state, by its authorized agent, awarded a contract, and the object of the present proceeding is to compel the defendants, as public officers of the state, to sign the formal contract, and thereby perform what is alleged to be their ministerial duty. If the duty to be performed by a public officer of the state is purely ministerial, the writ of mandate may be issued, the case being otherwise a proper one for the employment of such writ. State. ex rel. State Pub. Co. v. Smith, 23 Mont. 44, 57 P. 449, and cases there cited; Marbury v. Madison, 1 Cranch. 137, 2 L. Ed. 60; In re Ayers, 123 U. S. 506, 31 L. Ed. 230, 8 S. Ct. 183.''

In Reliance Mfg. Company v. Board of Prison Commissioners, 161 Ky. 135, 170 S. W. 941, 944, the plaintiff was the owner of a contract for prison labor made in the name of the commonwealth by the board of prison commissioners. It gave notice of its exercise of the option contained in the contract to renew it for a period of four years. The board declined to renew the contract and suit was brought to restrain the commissioners from ousting the company from the prison shops and to compel the board to renew the contract in accordance with its terms. Holding that the board was acting under legal authority in making and providing for the renewal of the contract, the question appeared whether the suit was in reality a suit against the commonwealth for which no consent had been given. Describing the board of prison commissioners to be of a character very similar to the state highway commission, and holding that it had acted within its powers, and that the contractor had the right to demand a renewal of the contract, the opinion continues:

''So that the only ground left upon· which the board can defend its refusal is that, being an agency of the state, it cannot be compelled to do that which it was authorized to do and that which it agreed to do. If the board cannot be compelled to renew this contract, then one of the parties to the contract is denied, without any fault or wrongdoing or breaches, the right to compel the other party to perform his part of the contract. . . .

"Cases like this present strong reasons why the courts should afford relief, unless the right to do so is unmistakably withheld. Public agents of the state ought not to be allowed to perpetrate a wrong or commit a breach of contract and prevent the injured party from seeking redress in the courts by shielding themselves behind the barrier that the state, upon grounds of public policy, has erected for its protection against suits, unless the suit plainly falls within the prohibited class. The commonwealth of Kentucky does not desire to wrong any of its citizens or any one else. It wants, as do all well-governed states, to do what is right.

"Therefore, to prevent the injustice and wrong that in many cases would result if people dealing with public agents were left without remedy, however just their demands might be, this court has announced in many cases that public boards and agents of the state might be sued, although the acts about which suit arose were performed by them in their capacity as agents of the state. The correct rule, and the one supported by authority, is that a public agent, whether it be styled a body corporate, with the power to sue and be sued, or be a board or an individual with certain powers, may be sued by a private citizen to restrain the commission of a contemplated injury or wrong or compelled, as any other private citizen might be, to perform acts, essential to protect the property or contract rights of individuals having dealings with the agent, when the suit, whatever its nature may be, will not do more than restrain the commission of some wrong or compel the performance of some duty by the agent; or, to put it in another way, when the suit directly concerns some act of the board or agent, whether of omission or commission, that is not expressly authorized by the state."

Many authorities are cited for the conclusion reached that the plaintiff was entitled to the relief sought.

In the more recent case of Gordon v. Morrow, 186 Ky. 713, 218 S. W. 258, the court held that the Governor had the power to cancel a contract with attorneys who had been legally employed by his predecessor in office, but that the attorneys, who had been employed on a contingent fee, had the right to require the Governor to con-

sent of record that compensation to which they were entitled for services rendered might be determined by the court with the assistance of a jury, and that when judgment was rendered the attorneys could demand a warrant of the auditor for its payment, and in case of his refusal they might bring a mandamus suit to compel him to do so. The principle upon which that phase of the decision was based was that the statute under which the attorneys had been employed was in itself a legislative direction to the auditor to issue a warrant for their compensation; and that the proceeding to ascertain and determine by the judgment of the court the amount to which they were entitled as compensation was no more a suit against the state within the meaning of section 231 of the Constitution than would a mandamus suit by them against the auditor to compel him to issue a warrant for the amount due them under the contract, had they been permitted to complete it.

It is to be observed that in cases of this kind the distinction is drawn between suits seeking to create or increase the liability of the state, and suits seeking to compel administrative officers to satisfy a liability theretofore created—one to establish a right and the other to satisfy a right already established under authority of law.

In the instant case, according to the allegations of the petition, the liability of the commonwealth was created by the contract. It is now a matter of enforcing the contract. Of course, there may be presented a valid defense, but we are concerned here only with the sufficiency of the petition as amended on demurrer.

The court is of the opinion that the cause of action stated in the petition as amended comes within that class of cases which may be maintained against agents and officers of the state, and, therefore, that the court erred in sustaining a special demurrer to it.

The judgment is reversed for consistent proceedings.

Whole court sitting.

Chief Justice THOMAS and Judges DIETZMAN and REES dissenting.

### Dissenting Opinion by Judge Dietzman.

Although not present when this case was originally heard and considered, I have sat in its reconsideration and find myself unable to agree with the result arrived at by a majority of my brethren. Abstractly considered, the principles of law stated in the majority opinion meet with my approval, but as stated by one of Dickens' characters: "The point is in the application." The majority of my brethren have the idea that the petition as amended simply presents a case wherein it is sought by mandamus to compel a state agency to carry out a contract theretofore entered into by it. As I view the petition, as amended, no such state of case is presented, but it is a palpable and obvious effort on the part of the plaintiff to recover a money judgment against the defendant for breach of a contract theretofore entered into by it. If my view of the case is correct, I take it that even under the principles laid down in the majority opinion, the special demurrer was properly sustained as in such state of case, the suit against the state agency is in reality a suit against the state when it has not given its permission to be sued. What then is the case as presented by the record? In my judgment the majority opinion fails to discern the effect of the amended petition filed in this record. While it is true a pleading and its amendments are ordinarily to be read as a whole, yet it is fundamental that where the amendment sets up matter at variance with the original pleading, the amendment controls. So in order to get at what the original petition and the amendment here involved disclose, I must at the risk of some repetition set them out again. The original petition filed herein on November 24, 1924, in substance alleged that the state highway commission entered into a written contract with the city of Frankfort on July 23, 1923, by the terms of which the state highway commission agreed to take over certain streets included in what was then known as state project No. 17a but which is now known as U. S. 60, where it passes through the corporate limits of the city of Frankfort. The contract provided that *the state highway commission* should make all the surveys, plans and specifications for improving this highway and that *the commission should have actual charge and supervision of the construction thereof.* The agreement further provided that *the highway commission* should advertise for bids and award the

contract subject to the approval of the board of council of the city of Frankfort, and that it and the city of Frankfort should pay for the road in equal proportions, the city of Frankfort providing for its part of the cost by assessing the same against the abutting property owners. The petition averred that pursuant to the contract the state highway commission did prepare plans and specifications and advertised for bids and bids were received, and that the Irvine Construction Company was the lowest bidder *at a price of $215,052.15;* that thereafter and on May 15, 1924, the highway commission undertook to cancel the contract of July 23, 1923. By the prayer of the original petition, *the city of Frankfort asked that the highway commission be required to carry out the terms of this contract,* for a declaration of rights and for all proper relief. After this original petition was filed the case pursued a leisurely course until January 17, 1929, a little over four years from the time the suit was originally filed, when an amended petition was filed. That amended petition reads as follows:

"Par. I. Comes the plaintiff and begs leave of Court to amend its petition herein and states, that since the filing of its original petition herein that under proper ordinances and resolutions, it has caused the street or roadway to be constructed of sheet and rock asphalt at the expense of the City and the abutting property owners, from the Eastern limits on the Versailles Pike, through the City, to the Western limits on the Louisville Pike; and that this is the same street or roadway contemplated being built by the City and the State Highway Commission under the contract filed with the plaintiff's petition.

"Plaintiff states that owing to the condition of said street or roadway getting into such disrepair that it was necessary to keep same in a reasonably safe condition for public travel to improve the said street as indicated. That this construction has been made since the filing of the original petition herein and since the State Highway Commission refused to carry out the contract entered into with the City, and the entire expense of the construction of said street or roadway has been paid by the City and the abutting property owners at great cost, and that the

names of the abutting property owners and the amounts paid by each are herein set out in an exhibit herein filed, marked 'B,' it being a certified copy of the City Clerk, showing the names and the amounts paid by each.

"The plaintiff states that the total construction of the street or roadway amounted to the sum of $103,072.46.

"Par. II. The plaintiff states that the cost of construction of this street or roadway under the contract of the Irvine Construction Company would have been $215,052.15, according to the bids set out in plaintiff's petition, and if the State Highway Commission had carried out this contract with the plaintiff, the total cost of this construction would have been that amount, and that one-half would have been paid by the State Highway Commission and one-half by the plaintiff and the abutting property owners. The amount of one-half would have been $107,526.07.

"Par. III. *The plaintiff states that by reason of the breach of the contract by the Highway Commission,* the plaintiff and the abutting property owners have had to pay $103,072.46 for the construction of these streets, *and if the contract had been carried out,* each would have had to pay one-half of the construction of these streets, which would have been $51,536.23.

"Plaintiff states that aside from the difference in the cost of construction, the State Highway Commission agreed to take over or maintain said highway, after it had been constructed, as a part of the Highway System, and thereby eliminate the plaintiff or the abutting property owners from having to keep and maintain said street from further expense to them.

"Par. IV. The plaintiff states that it is a municipal corporation of the third class and under its charter has a right to sue and be sued, to contract and be contracted with. That the contract made by the City in its capacity is made for and on behalf of the citizens of the City, that the contract was made with the Highway Commission in its corporate name for and on behalf of the citizens of the City. That the citizens interested mostly are the

abutting property owners, that all the citizens are interested in, so far as the City is obligated to pay for the building of intersections, but that the abutting property owners are interested in the amount that each had to pay according to its front footage abutting on said street or highway.

"The plaintiff states that it is not only suing in its own corporate capacity for all the citizens, but that it is suing, also, for the benefit of all the abutting property owners fronting along this street, as the amount of money recovered herein should be prorated and divided and paid over to them, as it is shown that each is entitled to according to what they have paid and that this plaintiff and abutting property owners are interested in this matter only so far as their prorata interest may appear. And that this plaintiff, who contracted for them, is now suing for them in that capacity and will see that the money is distributed accordingly.

"Wherefore, plaintiff prays as in its original petition *and for the sum of $51,536.23*, one-half of the cost of the construction with interest until paid, that the State Highway Commission take over and maintain the streets in the City from the Eastern to the Western limits, for its costs herein expended and all proper relief." (Italics mine.)

Now what does this amended petition set up? Do its allegations further strengthen or support the cause of action set up in the original petition, namely, a mandamus to compel the highway commission to carry out a contract it has made, or do they show that the highway commission breached that contract, that the city of Frankfort was thereby compelled to do the work itself, under *its* plans, *its* specifications, *its* surveys, *its* judgment as to the type of surface, *its* judgment as to the type of foundation, and that it now seeks a money judgment for half the cost of performing its exclusive undertaking by way of damages for the breach of that original contract? I am utterly unable to see how any construction other than this latter alternative can be given to this amendment. My brethren of the majority hang their interpretation on the tenuous support of this allegation in the amended petition: "This is the same street or roadway contemplated being built by the City and State

Highway Commission under the contract filed with the plaintiff's petition;'' and argue that the streets as built by the city complied in all respects with the plans, specifications and survey originally agreed upon, and, therefore, the petition as amended simply seeks to make the highway commission comply with the uncompleted portion of their original contract, that is, the payment. Waiving the elementary rule that a pleading is to be construed most strongly against the pleader, and passing the fact that even though the streets had been constructed according to the plans and specifications of the highway commission, we are yet met with the insurmountable obstacle that the building of the streets by the city was not a building on a contract let by the highway commission, wherein its judgment as to who was the lowest and best bidder was to be had, if the original contract was to be carried out, and was not a building under the supervision of the highway commission, wherein its judgment as to whether the street was being built according to contract was to be had if the original contract was to be carried out, I am of the opinion that a more common sense interpretation of the allegation in the amended petition on which the majority rely is simply that the city constructed the same series of streets as were agreed upon in the original contract. I suppose the person who would probably know more what the pleading was meant to say than anybody else would be counsel for the city, and I take this from his brief:

"The City, necessarily *having to abandon* the arrangements made under the ordinances, passed for the purpose of the Highway Commission constructing said highway under its superintendency, to comply with the statutory regulations, had to pass new ordinances and taking other necessary and proper steps to bind the property owners, did, after proper bids and the letting of the contracts have this highway properly and permanently constructed with street paving materials, for all of which the abutting property owners and the City paid." (Italics mine).

In view of this excerpt from the appellant's brief, are we not compelled to admit that by the amended petition the city is not asking that the original contract be carried out, but that, because of contractual rights it has

by virtue of that original contract, it be given a money judgment because of the breach of that contract? The city's position is no different from the usual one of a purchaser or seller under a breached contract of sale who has been compelled to go into the open market and buy or sell as the case may be, and then seeks the difference between the contract price and the market price by way of damages. Perhaps a more apt illustration would be where a party to a contract has the right to bring suit for specific performance, but later, abandoning that remedy, asks damages for the breach of the contract.

But it may be argued that at least to the extent of its obligation to "maintain" the streets, the highway commission may be mandamused to carry out its original obligation. The trouble about that contention is that the highway commission agreed to maintain streets that *it* built, under *its* plans and specifications and supervision. There is no allegation that the streets the city built were such streets as the highway commission had contracted to maintain, and surely we cannot compel the highway commission to do something it had not agreed to do. The maintenance of a street will vary according to the quality and efficiency of its original construction. The city must allege facts to sustain their cause of action and surely, in the absence of such allegation, it cannot compel the highway commission to maintain streets which the city built when the highway commission only agreed to maintain streets built under *its* plans, *its* specifications, and *its* supervision.

Being firmly convinced that the petition as amended does not present a case of a "mandamus to compel a state agency to carry out a contract it theretofore entered into," but just a simple, plain, ordinary case of a "prayer for damages for breach of a contract," in which state of case, as the majority opinion concedes, this suit cannot be maintained because of the state not having given its permission to be sued, I must dissent from the majority opinion. I am of the opinion that the judgment of the lower court should be affirmed.

I am authorized to state that Chief Justice THOMAS and Judge REES concur in this dissent.