## Perry County et al. v. Townes et al.

(Decided March 22, 1929.)

JOHN E. CAMPBELL and J. K. POLK TURNER for appellants.

W. C. EVERSOLE for appellees.

OPINION OF THE COURT BY COMMISSIONER TINSLEY—
Affirming in part and reversing in part.

High street, in the city of Hazard, runs practically in an east and west direction along the foot of a hill or ridge; further up on that hill or ridge, and about 100 feet from High street, is Combs street, running approximately parallel with High street. Appellee owned a lot abutting Combs street on the north side, and on which he had erected a four-room cottage, coalhouse, and other outbuildings, and had drilled a well. The total cost of the improvements was $1,778.36.

Prior to the year 1925, the city of Hazard had paved High street, at the expense of the abutting property owners, from its western terminus to within four or five hundred feet of its eastern terminus at the city limits, but had not paved this four or five hundred feet for the reason that the abutting property was not of sufficient value to stand the costs of paving. Appellee's lot was on the hill above and directly opposite this unimproved four or five hundred feet of High street. The ground between appellee's lot and Combs street and abutting this portion of High street belonged to H. Mazer.

In the year 1925, the state highway commission let the contract for the construction of state highway project No. 4, a road running up the north fork of Kentucky river through Hazard. This highway runs over High street through the city of Hazard. The plans and specifications for that highway, prepared by the state highway commission, provided for the work of construction to begin within the corporate limits of the city of Hazard, on High street, at the point where the pavement of the street ended, and to extend from that point over High street on up the river. In order to bring that portion of High street to the grade provided by the plans and specifications, the contractor cut down the side of the hill or ridge, and this left an embankment on the upper side of the grade from 20 to 30 feet high, directly in front, and

about 150 feet from, appellee's lot. A few months after the completion of the grade, the hillside began to break off and slip toward the grade, and within a few weeks this breaking and slipping had continued up the hill until appellee's lot broke and slipped, carrying his dwelling, outhouses, and fences with it, and destroying his well. He thereupon instituted this suit against Perry county and the city of Hazard to recover $3,300 in damages, and on trial was awarded $1,500 against both defendants, and they have appealed.

Perry county insists that it is not liable to appellee because the highway commission prepared the plans and specifications, and, through its contractors, did all the work in connection with the grading of the highway without any assistance from Perry county, and that there is neither allegation nor proof that Perry county had anything to do with the construction of the highway, the letting of the contract, or providing the right of way. While for appellant, city of Hazard, it is urged that it was not a party to the contract for the construction of the highway; it was under no obligation to provide any right of way therefor, nor had it entered into any agreement with the highway commission for the construction of this road.

It is to be noted that, by making the side cut along the foot of the ridge for the purpose of bringing High street to the grade provided by the plans and specifications of the state highway department, the upper side of that cut was from 20 to 30 feet high. The cutting down of this hillside removed the lateral support of the Mazer lots, and, when they slipped into the cut, the lateral support of appellee's lot was gone, in consequence of which it too slipped into the cut. The removed of the lateral support of premises bordering on a highway, in making highway improvements, to the extent of causing a substantial part of the adjoining owners' land to subside and fall so as to injure the premises affected, is to all intents and purposes an invasion of private property rights; an appropriation of the soil to the extent of such injury, and amounts to a taking of property for public use. The right of a landowner to have his property protected against an excavation which will cause it to subside, is a part of his property in the land, alike in nature and importance to the right of user or of exclusion; and the deprivation of the right is a taking of property as much

as an actual appropriation, and falls within the inhibition of section 242 of our Constitution which, in part, provides:

> "Municipal and other corporations, and individuals invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured or destroyed by them; which compensation shall be paid before such taking, or paid or secured, at the election of such corporation or individual, before such injury or destruction."

In the case of City of Henderson v. McClain, 102 Ky. 402, 43 S. W. 700, 19 Ky. Law Rep. 1450, 39 L. R. A. 349, where the street on which plaintiff's property abutted had been excavated and the grade lowered, thereby leaving the surface of the lot from 8 to 10 feet above the street, the entrance to the lot barred by a high perpendicular bank, and, to protect the lot from constant caving, it would be necessary to construct a retaining wall at great expense; and in the case of Layman v. Beeler et al., 113 Ky. 221, 67 S. W. 995, 24 Ky. Law Rep 174, where the cutting down of a hill and ditch of a public road to such an extent that it impaired the plaintiff's land by making it impractical without a large expenditure for him to go from one part of his farm to another; and in the case of Moore v. Lawrence County, 143 Ky. 448, 136 S. W. 1031, where the construction of a ditch increased and accelerated the flow of water on plaintiff's land—we held in each case, the consequent injury to be a "taking" of the property within the meaning of the quoted section of the Constitution. To the same effect are the cases of O'Gara v. City of Dayton, 175 Ky. 395, 194 S. W. 380, L. R. A. 1917E, 574; Board of Councilmen of the City of Frankfort v. Edelin, 82 S. W. 279, 26 Ky. Law Rep. 601; Cassell v. Board of Councilmen of City of Nicholasville, 134 Ky. 103, 119 S. W. 789; and Illinois Cent. R. Co. v. Elliot, 129 Ky. 121, 110 S. W. 817, 33 Ky. Law Rep. 537. And, in the Layman v. Beeler and Moore v. Lawrence County cases, supra, we held that the provisions of section 242, supra, are applicable to counties in the construction and improvement of highways.

In the act of the General Assembly establishing a department of public roads and highways and providing for the construction of a primary system of roads and

highways in this commonwealth, approved March 16, 1920 (Acts 1920, c. 17, p. 76), it is provided, in section 7 (now section 4356t-7, Kentucky Statutes):

"No portion of the costs of acquiring any necessary land or right of way, except a temporary right of way, nor any part of any damages incurred, awarded or paid, shall be paid out of the state road fund, but all costs of acquiring any necessary land or right of way and any damages incurred, awarded or paid shall be paid by the county out of its general fund."

There was introduced in evidence a deed executed by H. Mazer to the state highway commission conveying to it a right of way over his land abutting High street, and between that street and appellee's land. In view of a further provision of section 4356t-7, Kentucky Statutes, to the effect that deeds for rights of way acquired by the county shall be taken in the name of the state highway commission, it will be presumed that this right of way was acquired by Perry county and the deed so taken in compliance with that statutory provision. It follows, therefore, that, if any force and effect is to be given to section 4356t-7, when read in connection with section 242 of the Constitution, as applicable to the rights asserted by the appellee in this case, it must be held that Perry county is liable to appellee for the damages sustained by him from the construction of this road. The "taking" in this case was a "taking" by Perry county, since under the statute the duty of providing the right of way, either acquired by contract or condemnation proceedings, and the payment of any damages incident thereto, devolved upon the county. In the case of Layman v. Beeler, supra, we said:

"The provision of the Constitution which requires that municipalities and other corporations taking private property for public use 'shall make just compensation for the property taken, injured or destroyed by them,' necessarily implies that, if the corporation should fail to make the compensation before the taking or injuring, it is liable therefor after such taking or injury, and that, if it will not pay the damages, an action is necessarily authorized to be instituted against it; for it would be idle to give to a party a right without a remedy to enforce it.

We therefore conclude that, if the facts as alleged in the petition be true—that is, that the improvement of the highway in question did so impair the plaintiff's adjacent lands and their value as to damage him—that was a taking and injury within the contemplation and meaning of the Constitution, and the language of that section necessarily implies a right upon the part of the citizen to maintain his action against the county to recover such damages, if not otherwise settled.''

Applying the reasoning of the opinion in that case, and the cases cited in it, to the facts in this case, it must be held that section 242 of the Constitution gives to appellee a right of action, and that section 4356t-7 of the Statutes fixes the liability of the county, for the damages sustained by him growing out of the construction of the road in question.

At the conclusion of plaintiff's evidence and again at the conclusion of all the evidence, the city of Hazard moved the court to peremptorily instruct the jury to return a verdict for it, which motion the court overruled. It now insists that it was entitled to such a verdict. The act of the General Assembly, supra (now section 4356t-8, Kentucky Statutes), provides:

''When any primary road herein designated must pass through a city or town, the State Highway Commission is hereby empowered to enter into a contract with such city or town for the construction of such road if the road through the city or town is to be different from the road constructed outside of the city or town, but if the road is the same the cost thereof shall be paid as is the cost of other roads designated herein. In the event it is necessary to construct a road or street at a greater cost than is paid for construction of a like lineal mileage outside of the city or town, such city or town must pay the additional cost of construction, and the details shall be agreed upon between such city or town and said State Highway Commission.''

Under that section, the state highway commission is authorized to adopt and to use and to designate as a part of the state highway any street through any city or town which may be necessary or proper to use for the traffic

over such road and through such city or town; and it is not required to obtain the consent of any such city or town to so adopt, designate, and use such street. If the road or street through the city or town costs no more for its construction than the road outside of the city or town, the cost of construction shall be paid by the state highway commission; but, if the type of the road within the corporate limits of the city or town be different from that outside of such corporate limits, or shall cost more for its construction than that outside the corporate limits, then such city or town shall enter into a contract with the state highway commission therefor, and the city or town shall pay the increased cost.

There is nothing in the record to indicate that there is any difference between that part of High street within the corporate limits of Hazard and that part of the road outside the corporate limits of Hazard; and there is neither allegation nor proof that there was any contract or arrangement between the state highway commission and the city of Hazard for the construction of that part of High street embraced within this road—state highway project No. 4. In the absence of any showing that there is any difference in the type of construction inside the city limits and that on the outside, and that there was any contract or arrangement between the state highway commission and the city of Hazard, for the construction of such road, it must be presumed that the same type of road, and of the same cost, was constructed both inside the corporate limits and outside, and that, in utilizing that part of High street within the corporate limits of the city of Hazard as a part of state highway project No. 4, the state highway commission was exercising the power conferred upon it by the statute, for which it is not required to secure the consent of the city. Under the express provision of the last-quoted section of the statutes, the payment of the cost of construction of that part of the road within the city limits devolved upon the highway commission. The cost of acquiring the necessary rights of way, and any damage incurred, awarded, or paid, must be paid as provided for in section 4356t-7 of the Statutes, which, as we have seen, places that burden upon the county.

It follows, therefore, that the motion of the city of Hazard for a directed verdict in its behalf should have been sustained.

·Wherefore the judgment as against the county of Perry is affirmed, and the judgment as against the city of Hazard is reversed, for proceedings consistent with this opinion.

Whole court sitting.