FLOYD COUNTY, KY. v. WEST VIRGINIA-
KENTUCKY HARDWARE & SUPPLY
CO. et al.
No. 5889.

Circuit Court of Appeals, Sixth Circuit.
June 29, 1932.

A. J. May, of Prestonsburg, Ky. (Joe P. Tackett, of Prestonsburg, Ky., on the brief), for appellant.

B. F. Combs, of Prestonsburg, Ky., and S. L. Blakely, of Covington, Ky. (Combs & Combs, of Prestonsburg, Ky., and Stephens L. Blakely, of Covington, Ky., on the brief), for appellees.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKS, Circuit Judge.

Floyd county appeals from a decree against it in favor of N. M. White, receiver of Winchester Coal Company, in the sum of $22,000.

On December 7, 1920, D. B. Leslie and wife leased certain premises lying along the Big Sandy river in Floyd county, Ky., to W. D. Judy, Jr., for coal mining purposes. On June 1, 1921, this lease was assigned to the Winchester Coal Company. It contained the following clause, to wit: "* * * and the lessors excludes from this lease a right of way for railroads, and *state road*, and also the river banks." (Italics ours.)

Shortly thereafter the coal company opened a mine upon the property and established, erected, and equipped a mining plant. The plant and physical properties of the coal company with their relation to each other, the river, the railroad, and county road, were as follows: The mine, headhouse, dump, dwellings, and machine shop were all on the east side of the river, and the railroad to which the coal was delivered for shipment was on the west side. The mine entry was about five hundred feet up the river from the headhouse, and was connected therewith by tram tracks. These tracks followed the contour of the hill and entered the headhouse, built on the side of the hill, over a trestle which was inclosed and to all appearances was an integral part of the headhouse. The coal was transported over the tram tracks to the headhouse, and thence across the river on an aerial tramway to the railroad. Underneath the trestle was the old county road. This old road ran between two of the bents of the trestle and in the same general course as that of the river. The main part of the headhouse containing the tipple and heavy machinery stood west of the road and between it and the river. The dump was up the river from the headhouse, and the tracks from the mine entry crossed the old road (at grade) to reach it. From this point to the headhouse the road was slightly downgrade, and the tracks from the entry to the headhouse were about twenty feet higher than the road. The machine shop stood near the headhouse on the slope above the road and a short distance from the tram tracks. The dwellings were located down the river from the headhouse, and were, with one or two exceptions between the road and river.

In 1919 or 1920 the state highway commission surveyed a road up the river and through the Leslie property. This survey

was probably the cause of the reference to a "state road" in the clause of the lease heretofore quoted. It was made under the supervision of the state highway commission, and was paid for by appellant. About the same time appellant paid the Leslies for a right of way and took a deed therefor; but it is not in evidence, nor is the location of the right of way shown with any certainty.

In 1926 the highway commission finally fixed the location of the road. The first survey ran through the west or tipple end of the headhouse, but location along this survey would have required the removal of the heavy tipple machinery therein, and so, upon objection of N. M. White, Jr., the president of the coal company, and also because the engineer thought that the construction would be cheaper, the final survey shifted the road up the hill and established it along the course of the old county road and under the trestle part of the headhouse. The increased width of the new road over the old made it necessary to remove one of the bents of the trestle. The coal company agreed that this might be done, and appellant agreed to do the work. It let the work to a contractor who took out one bent and installed steel girders to support the trestle over the roadway. He also built a concrete foundation on the upper side of the roadway upon which the east ends of the girders rested. The coal company expressed satisfaction with this reconstruction work, and, when it was completed, the highway commission, through its contractors, Smith-Combs Construction Company, built the road. The established grade required that a cut should be made through the coal company's property from eight hundred to one thousand feet long and from two to twenty feet deep. Directly under the trestle the cut was about fifteen feet deep.

About four or five months after the grade was completed, cracks or slips began to appear in the hill above. These slips increased both in number and size until appellee White, who was then receiver for the coal company, became alarmed, and advised the county authorities and the state highway commission of the impending danger. While a controversy was in progress over whose duty it was to remedy the situation, a huge slide occurred which demolished appellee's machine shop and seriously damaged its tracks, trestle, headhouse, and other property.

We agree with the concurrent findings of the master and the trial court that the dam-

age was caused by the removal of the lateral support to the hillside, and an examination of the record discloses no reason for a disagreement upon the extent of the liability.

The District Court found appellant liable in virtue of section 4356t-7 of Kentucky Statutes printed in the margin[1] as construed by Perry County v. Townes, 228 Ky. 608, 15 S.W.(2d) 521. The Townes Case held in substance that section 4356t-7 (read in connection with section 242 of the Kentucky Constitution requiring compensation for private property taken, injured or destroyed for public use) fixed liability upon the county for damages caused by the removal of lateral support of premises bordering on the highway in making highway improvements. We see no escape from this decision. It is the interpretation of a Kentucky statute by the highest court of the state. See, also, Muhlenberg County v. Ray, 215 Ky. 295, 284 S. W. 1074; Metcalfe v. Lyttle, County Judge, 219 Ky. 488, 293 S. W. 979.

Appellant county urges that it is a municipal arm of the state, that the authority it exercises over its roads is a prerogative of sovereignty, and that it cannot be held responsible either for the trespasses of its officers and agents or for those of the independent contractor, Smith-Combs Construction Company. The proposition is sound when tested by the common law, but it is just as true that the state may waive its sovereignty and subject its various counties to such species of liability. See Cooley's Constitutional Limitations (8th Ed.) vol. 1, p. 517.

The contention that the petition does not state a cause of action is without merit. Appellee expressly bases its claim for damages upon the Constitution of the state of Kentucky, and the provision of the statute above referred to.

We do not think that the exclusion clause in the lease precludes a recovery. If we should accept appellant's contention that the Leslies reserved to themselves a right of way for a state road, which they afterwards sold to appellant, even so it follows that appellant acquired no more than a right to a highway over the leased lands. Appellee did

---

[1] "No portion of the cost of acquiring any necessary land or right of way, except a temporary right of way, nor any part of any damages incurred, awarded or paid, shall be paid out of the state road fund * * * but all cost of acquiring any necessary land or right of way and any damages incurred, awarded or paid shall be paid by the county out of its general fund."

not dispute this right. It recognized it, and the highway was located by agreement within definite limits. It was not necessary to the enjoyment of appellant's right of way that it should injure or destroy appellee's property by removing its lateral support and causing the "slide." If the highway authorities desired to reduce the grade of the road, it was their duty to protect appellee's property by sufficient retaining walls or otherwise. The damage caused by their neglect amounted to trespass.

Appellee relies upon the doctrine of estoppel in pais. It insists that the highway commissioner had located the road through the lower end of the headhouse; that the change to the course of the old road under the trestle was made at the request and with the acquiescence of appellant; that, to provide the necessary clearance and width of the road under the trestle, appellant permitted, and to some extent supervised, a reconstruction of the trestle structure. But it was necessary that appellant should acquire a right of way, and its final location involved no more than a mutual agreement between the parties. Appellant could not in any sense rely upon this agreement as justification of, or authority for, the destruction of appellee's property.

We find nothing in the case of Taylor v. Westerfield, 233 Ky. 619, 26 S.W.(2d) 557, 69 A. L. R. 482, which tends to excuse appellant. That case goes no further than to hold that independent contractors prosecuting work under contract with the state, or some subordinate arm of the state, are responsible for damages to third persons caused by their own negligence.

The judgment of the District Court is affirmed.