# Schultz, Superintendent of Common Schools of Ohio County et al. v. Ohio County et al.

(Decided December 4, 1928.)

## Appeal from Ohio Circuit Court.

1. Counties.—Provision of Acts 1918, c. 138 (Ky. Stats. Supp. 1918, sec. 4399a-5), that fiscal court should furnish county school superintendent with suitable office free of charge, which provision has been in the statutes for many years, originating in Acts 1891-93, c. 260, enacted pursuant to Constitution, sec. 183, and pursuant to which office of county superintendent has been maintained in courthouse or at county seat by fiscal courts throughout commonwealth practically since establishment of public school system, was not abrogated, nor impliedly repealed by Acts 1920, c. 36, which was a new and independent act complete in itself, and hence fiscal courts of respective counties must furnish without charge an office to county school superintendent.

2. Statutes.—It is an elementary rule of construction that repeal of an existing law by implication is not favored by courts, and legislative enactment will never be interpreted as inferentially repealing prior statute unless repugnancy is so clear as to admit of no other reasonable construction.

3. Statutes.—Courts will construe statutes if possible so that both shall be operative and effective, if it can be done without contradiction or absurdity, and if any part of existing law can be reconciled or harmonized with provisions of new act, it will not be deemed as having been repealed.

4. Counties.—Legislature having full knowledge of Acts 1918, c. 138 (Ky. Stats. Supp. 1918, sec. 4399a-5), requiring fiscal court to furnish county school superintendent with office free of charge, and fact that throughout commonwealth fiscal courts have been providing such offices, its failure to deprive school superintendents of such accommodations by express provisions in Acts 1920, c. 36, must be construed as an intention not to change existing conditions.

5. Statutes.—The intention of Legislature in enacting law being controlling factor in its construction under Ky. Stats., sec. 459, where there is doubt as to meaning of laws, court must look to historical setting surrounding its enactment, public policy of state, conditions of its laws, habits and manners of its people, and all other facts and circumstances that throw intelligent light on intention of lawmaking body.

A. D. KIRK and CLARENCE BARTLETT for appellants.

OTTO C. MARTIN for appellees.

Opinion of the Court by Commissioner Stanley—
Reversing in part and affirming in part.

This suit was instituted by Ohio county and the members of its fiscal court against the appellants, the superintendent of the common schools of Ohio county and the members of the county board of education, seeking to evict them from a room in the courthouse being used as an office and library, it being alleged that under the law the fiscal court of the county is not required to furnish such accommodations. They further sought to recover rent for the use of the office from the ——— day of June, 1920. This latter plea was stricken on motion. The defendants denied the power of the plaintiffs to evict them, and affirmatively alleged their right to occupy the room and to have the fiscal court maintain it. A demurrer to the answer was sustained and judgment of eviction followed, from which judgment this appeal is prosecuted. Appellees have filed a cross-appeal from the order eliminating their plea for rentals.

We have therefore for determination the question whether under existing law the fiscal courts of the respective counties in the commonwealth must furnish without charge an office to the county school superintendent. We hold they must. This conclusion is rested upon the opinion that the following provision in chapter 138, Acts of 1918, p. 589, was not repealed by the General Assembly in enacting chapter 36 of its Acts of 1920, namely:

". . . The fiscal court shall furnish the county superintendent with a suitable office free of charge, large enough to accommodate the county teachers' library and the assistants in his office."

This provision has been in our Statutes for many years. Pursuant to the mandate of section 183 of the present Constitution, the Legislature enacted a general law on the subject of common schools in 1893 (chapter 260, Acts of 1891-93), containing the foregoing provision in the identical language, except the clause "and the assistants in his office." That section of the act of July 6, 1893, was amended in 1902 and again in 1912. In each instance this statute was re-enacted, and in 1912 the clause with reference to the assistants was added. The Legislature of 1916 enacted a comprehensive recodification of all the school laws (chapter 24), and section 50 of

that chapter included this provision. That section of the act of 1916 was specifically repealed and materially amended in 1918, but the above provision was re-enacted in exactly the same language as theretofore (Acts of 1918, p. 589), and incorporated in the Statutes as section 4399a5 (Ky. St. Supp. 1918).

Appellees contend that chapter 36 of the Acts of 1920 abrogated this provision of the law respecting the furnishing of an office to the county school superintendent. The act, however, was not amendatory of any previous legislation, nor was any law repealed or affected unless done by the customary conclusion that "all laws and parts of laws in conflict with the provisions of the act are hereby repealed." It was a new and independent act, complete in itself, in so far as it related to its specific purposes. The matter of furnishing an office to the school superintendent was not included among its provisions. The act of 1920 was amended in 1922 (chapters 8 and 39), and in 1924 (chapter 52) and again in 1926 (chapter 172), but there is no provision in any of these acts affecting the one involved here. In 1928 (chapter 60) the Legislature again changed the law respecting the election and duties of the county board of education, and re-enacted the provisions relating to the duties of the school superintendent, but there is no reference, expressly or inferentially, to the matter of maintaining his office. A county board of education, with prescribed powers and duties, had already been established prior to 1920 (section 4434a5, Statutes of 1918), and in the session of that year the principal change made by the Legislature in the educational system was to provide for a new board with increased powers, including the selection by it of the county school superintendent as its executive agent. The other changes were of comparative minor importance. The only part of the act of 1920 which affects the section of the act of 1918, above referred to (section 4399a5, Ky. Stat. Supp. 1918) is one sentence in section 10, which changes the minimum salary of the superintendent in a certain class of counties, and requiring its payment by the board of education out of the school funds instead of by the fiscal court out of the general county levy. That portion of the prior statute relating to these matters was clearly repealed, as it was in conflict with the express enactment, but the remainder of that section was not

affected, for it in no way conflicts with any provision of the new act but is in harmony therewith.

It is an elementary rule of construction that the repeal of an existing law by implication is not favored by the courts, and a legislative enactment will never be interpreted as inferentially repealing a prior statute or part thereof unless the repugnancy is so clear as to admit of no other reasonable construction. This universal rule means that the courts will construe the acts if possible so that both shall be operative and effective if that can be done without contradiction or absurdity. If any part of the existing law can be reconciled or harmonized with the provisions of the new act it will not be deemed as having been repealed. Head v. Commonwealth, 165 Ky. 604, 177 S. W. 731; Ex parte Lawrence, 204 Ky. 568, 265 S. W. 287; Commonwealth v. International Harvester Co., 131 Ky. 561, 115 S. W. 707, 133 Am. St. Rep. 256. In Thomas, etc., v. Hurst Home Insurance Co., 186 Ky. 178, 216 S. W. 368, it is said:

> "If they cannot be harmonized so as to allow the two to stand without violence to some part of the language employed in one or both statutes, they should be construed so that as much as possible of each will remain."

In the Lawrence case, supra, we had under consideration chapter 90 of the Acts of 1920 relating to the operation of motor vehicles upon the public highways of the state. The question before us was whether or not a provision of the act of 1918 regulating the width of tires of certain vehicles was repealed. The new act was a comprehensive one dealing with the subject of the use of motor vehicles, but made no reference to the width of tires or maximum loads, nor contained any provision covering those subjects. It was held as a consequence that the provisions of the 1918 vehicle law in that regard were not repealed by the later act. The principle controlling that conclusion is of specific application to this case, as the same relation exists between the two acts respecting the duties of the fiscal court as to furnishing an office for the school superintendent. The old provision blends in perfect harmony with the new law and easily becomes a consistent part of the laws relating to the county school superintendent.

Notwithstanding the various enactments referred to, the general functions and primary duties of the head of the county school system have remained substantially the same, whether he was called the school commissioner and chosen by the fiscal court, or the school superintendent elected by the people for the first time in 1884, and later by the county board of education. He has always been regarded as an important county officer, whose duties and responsibilities have grown in importance and usefulness. The purpose and general trend of these several enactments has been to secure an improved system of public education and its efficient administration.

When the members of the General Assembly passed the act of 1920, they did so with full knowledge of the existing law and the fact that during practically all the years since the establishment of the public school system the office of the county superintendent had been maintained in the courthouse or at the county seat by fiscal courts throughout the commonwealth. Indeed, as is alleged in the case at bar, in building the courthouses special provision was made for such officers. Having knowledge of such conditions, it cannot be conceived that the Legislature would deprive the school superintendent of these accommodations without expressly so providing. Failure to do so must be construed as an intention not to change the existing conditions. In 25 R. C. L. 921, it is said:

"As laws are presumed to be passed with deliberation and with full knowledge of the existing ones on the subject, it is but reasonable to conclude that the Legislature, in passing a statute, did not intend to interfere with or abrogate any former law relating to the same matter unless the repugnancy between the two is irreconcilable."

The intention of the Legislature in enacting a law must be the controlling factor in its construction and interpretation (section 459, Statutes), and where there is doubt as to the meaning of such laws the courts may look to "the historical setting surrounding its enactment; the public policy of the state; the condition of its laws; the habits and manners of its people; and all other prior and contemporaneous facts and circumstances that throw intelligent light on the intention of the lawmaking body." Sewell v. Bennett, 187 Ky. 626, 220 S. W. 517;

Commonwealth v. Barnett, 196 Ky. 731, 245 S. W. 874. Moreover, there is an implied recognition in the act of 1920 of a continuing right in the superintendent to use these offices by the provision in section 10 that those in office at the time should not be affected by the act except to require their attendance at certain meetings; and also in the act of 1926 by requiring the members of the board of education to meet at their office at the county seat (Session Acts, p. 811).

In addition to their contention that the long-standing provision respecting the maintenance of the school superintendent's office by the fiscal court was repealed by implication by reason of its omission from the act of 1920, or rather as argument in support of that contention, appellees strongly maintain that the act placed the schools under the absolute control of the board of education, which was established as an entity, separate and distinct from the fiscal court. It is argued that the entire management and direction of school affairs was taken out of the hands of the court, and it was clearly provided that out of the school funds coming into its hands the board should pay not only the salary of the superintendent, but his expenses, including the maintenance of his office and the school library. It is true the board of education has been given control of the school administration, both fiscal and executorial, and that the taxes collected for school purposes must be applied altogether to their maintenance. It is in a large measure independent and self-operative. But there has not been a complete divorcement from the other county officials and agencies, nor are the functions of the board and superintendent wholly unrelated to them. Among the interrelations provided in the act of 1920 are those with the county clerk respecting the election of the members of the board, the expense of which is paid for out of the general levy; with the county tax commissioner, who makes the assessment for school purposes, the county clerk as the clerk of the school board certifying the assessment to it; with the fiscal court, which must levy the school tax; and with the sheriff, who collects it. At its subsequent sessions the Legislature created new relationships, such as requiring the fiscal court to levy a school poll tax without demand of the board, by making the county treasurer ex officio the treasurer of the county school fund, and making it

the duty of the county attorney to resist improper claims presented to the board.

It is further argued that since holders of property residing in graded school districts are taxed to support their schools, which are maintained independently of the county school system, and are also taxed to maintain the courthouse and for the general purposes of the county, they are thereby required to contribute to the expenses of maintaining an office for the county school superintendent, who has no connection with their graded school district. That is undoubtedly true to an infinitesimal extent. But these same taxpayers contribute to the expenses of electing the members of the board of education and to the payment of the salary of the county attorney and compensation of the members of the fiscal court and tax commissioner, all of whom as a part of their official duties render service to the county board of education. The Legislature had the right to require this, and, since it did so, the courts may not intervene or set aside the enactment because perhaps unfair, whether it be to a large or small degree.

The pre-eminent purpose of the Legislature has been to provide for the most efficient system of education within their judgment. The maintenance of an office for the school board and its chief executive officer in the customary place where they may have convenient contact with other governmental and fiscal agencies with which they must transact public business is conducive to efficient public service. This fortifies our conclusion that there was no intention on the part of the Legislature to repeal the provision referred to, and, as suggested, in construing its acts, the court will always endeavor to effectuate the intention of its co-ordinate branch of the government.

This case has been well briefed, and several other interesting points are presented, but we shall forego their discussion, as it seems to us the reasons given are sufficient to support our conclusion.

The judgment is reversed on the original appeal and affirmed on the cross-appeal.