## Tipton v. Brown, Director of Game and Fish, et al.

March 24, 1939.

Wm. B. Ardery, Judge.

626

EDWARD C. O'REAR and ALLEN PREWITT for appellant.

HUBERT MEREDITH, Attorney General, and A. E. FUNK, Assistant Attorney General, for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

Officers who work the governmental machinery of the State necessary to accomplish the purpose have been sued by Mrs. Mary C. Tipton to obtain, through the form of a writ of mandamus, what is in effect specific performance of an alleged contract to purchase from her 1,077 acres of land in Franklin and Owen Counties as a game preserve. A judgment dismissing the petition, after sustaining a demurrer thereto, was reversed in Tipton v. Brown, 273 Ky. 496, 117 S. W. (2d) 217. Upon a trial on the merits, the chancellor again denied plaintiff any relief and she appeals.

Authority for the suit is claimed under Reliance Manufacturing Company v. Board of Prison Commissioners, 161 Ky. 135, 170 S. W. 941; Board of Council-

men v. State Highway Commission, 236 Ky. 253, 32 S. W. (2d) 1008; State Highway Commission v. Board of Councilmen, 245 Ky. 799, 54 S. W. (2d) 315.

The plaintiff, in her own name, had obtained options upon several farms for the purpose of selling the boundary to either of two prospective purchasers when she learned that the Division of Game and Fish of the Department of Conservation of the State was in the market for a game farm. She brought this body of land to the attention of James Brown, director of the Division. After negotiations, and upon the assumption that he possessed sufficient authority, he agreed to buy it, with some additional land which was available, at $25 an acre. Mrs. Tipton then secured written options on all the land. She and her counsel were in frequent consultation with Hon. J. W. Jones, Assistant Attorney General, representing the Division, concerning the legal questions. Surveys and maps were made and abstract of title prepared and approved by the assistant attorney general. After these things had been made satisfactory to Mr. Jones and Mr. Brown, the proposition, or as plaintiff claims the completed contract of purchase, was submitted to the Kentucky Real Estate Board, with three of the five members present, on November 5, 1937. They approved the purchase of the land at the price agreed upon. Thereupon Brown made a "Purchase Requisition" on the Division of Purchases and Public Properties of the Department of Finance for the payment of the purchase price, $26,927.50. After the alleged approval by the Kentucky Real Estate Board Mrs. Tipton had executed the necessary deeds to the land and to release all liens and these were put in escrow with a banker, with power of attorney to release the liens and deliver the deeds simultaneously with the payment of the purchase price by the State. Mrs. Tipton expended or incurred obligations to the amount of over $2,400 up to this time. The Department of Finance refused to honor the requisition, and on November 18, 1937, the Kentucky Real Estate Board rescinded the previous action. The suit followed.

It is submitted that the approval by the Kentucky Real Estate Board was not necessary and its action was superfluous. But, it is argued, that if it should be held otherwise, then its authorization on November 5th was valid, and, since the appellant, as the other party acting in reliance thereon, had suffered detriment, it was irre-

628

vocable. As is stated in the opinion of the first appeal, the defendants maintain that the action of the Kentucky Real Estate Board was void because two of its members were not given notice of the meeting and did not attend.

We first look to the statutes to determine whether the Director of the Game and Fish Commission had authority to enter into a contract of purchase of the land so as to bind the Commonwealth.

At its regular 1936 session, the legislature created, as the successor of the previously existing body, a "Game and Fish Commission," consisting of five members appointed by the Governor. Chapter 56, Acts of 1936; Section 1954c-42 et seq., Kentucky Statutes. The Commission was given power to acquire by purchase or other methods, and to operate and develop, land for game farms or refuges. Section 1954c-49, Kentucky Statutes. This act was effective February 21, 1936. Two weeks later, on March 7, 1936, the "Governmental Reorganization Act" passed by the First Extraordinary Session of the 1936 General Assembly (Section 4618-68 et seq. Kentucky Statutes) was approved by the Governor. This act created the "Department of Conservation," which is charged with exercising the administrative functions of the State relating to "the protection and conservation of wild life in the State." Section 4618-121. The functions of the Game and Fish Commission were specifically transferred to and vested in this department. The Act says, " 'Functions' means jurisdiction, powers, duties, rights, and obligations conferred or imposed by law, or exercised, performed, or discharged by legal authoritty and not in contravention of any provision of law." Section 4618-69, Kentucky Statutes. This department is headed by a Commissioner of Conservation. For purposes of administration it is divided into certain divisions, among which is the "Division of game and fish." Section 4618-123, of the Statutes, defines and specifies its authority thus:

"The division of game and fish shall be headed by a director, who shall administer affairs of the division under the supervision of the Commissioner of Conservation. The Governor shall appoint an advisory game and fish commission of five members, one to serve for one year, one to serve for two years, one to serve for three years, and two for four years. As their respective terms expire, the

appointment of their successors shall be for four years.

"The division of game and fish, under the supervision of the Commissioner of Conservation, shall have and exercise the functions heretofore assigned the game and fish commission by law."

It is further provided that the advisory commission shall serve without compensation.

We do not read in this statute the transfer of the functions of the old commission to the director solely, nor find in it any power in that officer to bind the State in the purchase of the property. It is not believed that the legislature intended that in matters of such importance or policy so extensive the head of the department, namely, the Commissioner of Conservation, should have no voice. The Division of Game and Fish is not made up alone of the director. It is composed of the director and five members, though designated as "advisory." It does not seem necessary here to define the powers of that body. It is sufficient to say that the intent was not to vest the authority undertaken to be assumed here in the director of the division. If this advisory commission had any authority in this connection it did not exercise it. It is true that in July, previous to the negotiations for the purchase of the property involved, three members of that body adopted a motion "to purchase a game farm and to set aside $20,000 of the funds of the division for this purpose." This was no authority to buy this property for $26,927.50. Brown testified that he had talked with the Commissioner of Conservation about purchasing a game farm, and that is all. The conclusion, therefore, is that Mr. Brown alone had no authority to purchase the land.

We are of opinion the Kentucky Real Estate Board, even had all its members been present, was likewise without authority in the premises. The Act creating the Board was passed at an Extraordinary Session of the General Assembly which convened December 23, 1936. Chapter 17, Acts Fourth Extra Session, 1936-1937; Section 4636-37 et seq., Statutes (Supp. 1939). The title and general terms of the Act are very broad in their scope. The act specifies (Section 2) that the Board shall have the power and it shall be its duty "to sell all real estate belonging to the Commonwealth of Kentucky or to any corporate agency of the Commonwealth of

Kentucky, determined by said Board not to be needed for public use or which, in the judgment of the Board, has become unsuited for further public use.'' It further declares (Section 5):

"All monies collected from the sale of real estate, * * * as in this Act provided hereby is appropriated and placed to the credit of a special fund to be set up and known as the 'Public Property Fund.' "

The following section (6) empowers the Board to purchase any real estate it may deem necessary to carry on the proper functions of government for any department of government, and to erect or repair or cause to be erected or repaired any building or improvements, "and hereby is empowered to expend any of the monies collected or derived from the sale of real estate as set out in this Act for said purchase of real estate * * *; and every requisition for disbursement of any of the monies set up in the fund as herein set out, must be approved by the said Board and by the Commissioner of Finance,'' etc. Section 7 of the Act is as follows:

"The Commonwealth of Kentucky is now contemplating the change in location of its penitentiaries, reformatories, and other charitable and eleemosynary institutions and, whereas the Federal Government has made a grant to the Commonwealth of Kentucky of a sum of money to assist in building new and modern institutions, and whereas the institutions now owned by the Commonwealth of Kentucky will be unfit and are not properly located to carry out the program of the Commonwealth of Kentucky and the Federal Government in this change as is contemplated, to better the conditions in said institutions, and whereas the new property upon which said buildings are to be located must be purchased at once in order to take advantage of the Federal grant, and whereas it will be necessary to immediately sell the old property and apply the proceeds of the sale upon the purchase and construction of new property for this purpose, there is hereby declared an emergency to exist and this Act shall become effective immediately after it is passed and approved by the Governor. Provided that all provisions of this Act shall automatically expire January 3, 1940.

"All laws or parts of laws in conflict herewith

are hereby repealed in so far as same conflict herewith."

At a previous Extraordinary Session, which convened March 26, 1936, the legislature had appropriated, "For the purchase of land and the erection of buildings for the use of the Department of Welfare for the confinement of convicts and, the establishment of hospitals for the insane, feeble-minded, and epileptic wards of the State, the sum of $750,000." Acts 1936, 2d Ex. Sess., c. 1, p. 43. This was to be expended during the fiscal year ending June 30, 1937. An additional appropriation of $1,250,000 was made at the same time for the same purpose, to be expended in the fiscal year ending June 30, 1938. To dispose of the property owned by the State and being used for these purposes, and to acquire new sites, it appeared to be necessary to vest power in some agency, for it was at least doubtful if any one possessed such authority but the legislature itself. Cf. Board of Regents for Western Kentucky Normal School v. Engle, 224 Ky. 184, 5 S. W. (2d) 1062.

Other departments and corporate agencies of the State have for years possessed the power to buy and sell real estate used by them in their respective spheres. Thus, title to school property is vested in the Commonwealth of Kentucky (Section 4399-19, Statutes), and local State school officers have exercised the power of sale and purchase even since the creation of the Kentucky Real Estate Board; and the Department of Highways buys rights of way, quarries, etc. (sections 4356t-9, 4356t-12) the several counties paying for the rights of way. The Board is authorized to sell any land it deems not to be needed or which in its judgment has become unsuited for public use. In the matter of purchase its authority is to buy "any real estate that it may deem necessary to carry on the proper functions of government." Acts 1936-37, 4th Ex. Sess. c. 17, section 6. To say that to the Board was delegated the exclusive discretionary power to buy and sell all real estate of the Commonwealth and all its departments of whatever kind or wherever situated throughout the State, would be revolutionary. We think the purpose of creating the Board and the limitation of its stipulated powers are established by the last section of the act. The purchase of a game preserve is foreign to them.

To hold that this Board was given entire and exclu-

sive power over all property owned by or to be acquired by every division and agency of the Commonwealth would be to say that all of the several laws vesting such powers in other agencies were repealed by implication. Upon abundant authority, it was written in Schultz v. Ohio County, 226 Ky. 633, 11 S. W. (2d) 702, 704:

> "It is an elementary rule of construction that the repeal of an existing law by implication is not favored by the courts, and a legislative enactment will never be interpreted as inferentially repealing a prior statute or part thereof unless the repugnancy is so clear as to admit of no other reasonable construction. This universal rule means that the courts will construe the acts if possible so that both shall be operative and effective if that can be done without contradiction or absurdity. If any part of the existing law can be reconciled or harmonized with the provisions of the new act it will not be deemed as having been repealed."

And there was added in Oldham County v. Arvin, 251 Ky. 317, 64 S. W. (2d) 907, 908: "Courts will presume that where the Legislature intended a subsequent act to repeal a former one, it will so express itself as to leave no doubt as to its purpose."

The Governmental Reorganization Act which vested the power in the Department of Conservation to buy game farms had been passed at the first of a series of extraordinary sessions of the legislature in the same year as described in the early part of this opinion. That Act had likewise vested similar authority in other departments of government. They were permanent. A very controlling consideration is that the Act establishing the Kentucky Real Estate Board made it only a temporary organization. It is automatically abolished January 3, 1940. It is not thought that the legislature intended that the various permanent statutes concerning property unrelated to the prisons and hospitals should by an implied repeal be superseded by this temporary act. It is to be noted that the closing clause does not say that they shall be merely suspended, but that it says that all conflicting statutes are repealed. To hold that there was an implied repeal of all of these statutes, to which we have referred, would seriously impair the governmental functions of the Commonwealth after January 3,

1940, for there would be no authority lodged anywhere to sell or acquire real estate for the State or any of its agencies.

For these reasons we hold that the action of the Kentucky Real Estate Board in connection with this transaction was a superfluity, and, even if the proceedings were regular, it availed nothing.

It thus appears that no officer of the Commonwealth having authority so to do made a binding contract with the appellant for the purchase of her land. The circuit court, therefore, correctly denied her the relief sought.

Judgment affirmed.

Whole court sitting, except Cammack, J.