**Kenneth Pete GALLOWAY; Sharon Green; and Kenneth Shadowen, Appellants,**

v.

**Ernie FLETCHER, Governor; and Marc Alan Yussman; Wesley Vernon Milliken; Laverne M. Waldrop; Karen L. Engle; Kimberly S. McCann; Frank Joseph Schwendeman, Members of Governor's Postsecondary Education Nominating Committee; and Murray State University, Appellees.**

No. 2006–CA–002428–MR.

Court of Appeals of Kentucky.

Aug. 31, 2007.

Discretionary Review Denied by Supreme Court Jan. 16, 2008.

Martin W. Johnson, Benton, KY, for appellants.

Michael T. Alexander, David E. Fleenor, Frankfort, KY, for appellees.

Before THOMPSON and WINE, Judges; HENRY,[1] Senior Judge.

---

1. Senior Judge Michael L. Henry sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

*OPINION*

HENRY, Senior Judge.

In the process of filling a vacancy on the Murray State University Board of Regents, Governor Ernie Fletcher rejected the first two lists of nominees submitted to him by the Governor's Postsecondary Education Nominating Committee (Committee), and appointed one of the nominees from the third such list. The Appellants in this case are the unsuccessful nominees named on the first rejected list. Acting upon their belief that the law requires the Governor to make the appointment from the first list submitted to him by the Committee, they filed a petition requesting a declaratory judgment and injunctive relief in Franklin Circuit Court. That court dismissed the petition on the Appellees' motion. We agree with the circuit court that principles of statutory construction compel the conclusion that the Governor is authorized by law to act as he did; hence, we affirm.

This case presents no factual dispute, and must be resolved by determining the correct interpretation and effect to be given to two statutes, Kentucky Revised Statutes (KRS) 164.005(5) and KRS 12.070(3). We review such matters *de novo*. *Bob Hook Chevrolet Isuzu, Inc. v. Commonwealth Transportation Cabinet*, 983 S.W.2d 488, 490 (Ky.1998).

The Appellants' opening argument, paraphrased, is that the Appellees' position is an implicit argument that KRS 164.005 is unconstitutional. The Appellees deny this characterization and assert that this argument was not presented to the circuit court, and that the argument is a misstatement of the issue before this Court. Our examination of the record confirms that the circuit court was not asked to consider the constitutionality of either of the statutes at issue and did not find constitutional exposition germane to the resolution of the narrow issue before him. Nor do we.

KRS 164.005 establishes the Governor's Postsecondary Education Nominating Committee and describes the Committee's membership, terms and duties. The Appellants contend that the statute requires the Governor to appoint one of the nominees from the first list tendered to him by the Committee, and that KRS 12.070(3) has no application to the appointment of members to the governing bodies of the Commonwealth's universities. The Appellees' position is that KRS 12.070(3) gives the Governor the authority to reject lists and require that other lists be submitted, which is what occurred in this case.

Our approach to this case will be very similar to that employed by the circuit court. We know that KRS 164.005 applies to the appointment of members to the Murray State University Board of Regents. Does KRS 12.070(3) also apply? If not, our inquiry is concluded. If it does, and if the two statutes are indeed in conflict, we must apply principles of statutory construction to determine the intent of the Legislature regarding their proper application.

Our starting point should be the language of the statutes themselves. The relevant parts of KRS 164.005 state as follows:

> (5) (a) The committee shall be responsible for submitting three (3) nominations from which the Governor shall select each gubernatorial appointment to a university or Kentucky Community and Technical College System governing board made pursuant to KRS 164.131, 164.321, and 164.821 and to the Council on Postsecondary Education pursuant to KRS 164.011. The committee shall not make recommendations for alumni, faculty, and staff appoint-

ments made pursuant to KRS 164.131 and 164.821 and the student appointments made pursuant to KRS 164.131, 164.321, and 164.821. If more than one (1) equivalent gubernatorial appointment is being made to a governing board or the Council on Postsecondary Education at the same time, the committee shall submit a number of nominees equal to three (3) times the number of vacancies. The committee shall provide to the Governor, inasmuch as possible, an equal number of male and female nominees. If the Governor needs nominees of a particular sex in order to make an appointment, the committee shall only provide nominees of that sex. The Governor shall select the appointees from among the nominees.

(b) ...

(c) Nominations shall be made thirty (30) days prior to the expiration of a term or as soon as practicable following an unforeseen vacancy. The Governor shall make the appointment within sixty (60) days following receipt of the nominations. If the Governor does not make the appointment within sixty (60) days, the committee shall select one (1) of the nominees to serve.

KRS Chapter 12 deals with the administrative organization of the Executive Branch of Kentucky's government. Only paragraph (3) of KRS 12.070 is directly at issue in this case. It says:

(3) Where appointments to administrative boards and commissions are made from lists submitted to him, the Governor may reject the list and require that other lists be submitted. Notwithstanding any provision to the contrary, in the event the current membership of a board or commission reflects a proportion of the minority group less than the proportion of the minority group in the total population of the Commonwealth, then the Governor may appoint a member of the minority group even if the list of nominees for a vacancy does not include a member of the minority group.

■ Our threshold inquiry is whether KRS 12.070(3) applies to the Governor's appointment of members to the Murray State University Board of Regents. The Appellants argue that by enacting KRS 164.005, the Legislature preempted the right the Governor has by virtue of KRS 12.070(3) to reject tendered lists of nominees. This is so, their argument goes, because KRS 164.005 is specific as to appointments to the governing boards of universities, whereas KRS 12.070(3) is general in nature. Further, the language of KRS 164.005(5)(a) relating to the Governor's duties in appointing members to university governing boards is mandatory: the committee shall submit a list of three names for each vacancy "from which the Governor *shall* select each gubernatorial appointment" to university governing boards. (Emphasis supplied). KRS 164.005 is the newer of the two statutes, the first version of which was enacted in 1992. *See* 1992 Ky. Acts Ch. 10 Sec. 3. KRS 12.070(3) has been a part of Kentucky law in substantially the same form for over seventy years, having been originally enacted as part of the Reorganization Act of 1936. *Elrod v. Willis,* 305 Ky. 225, 228–229, 203 S.W.2d 18, 20–21 (1947).

By its terms, KRS 12.070(3) applies to situations "[w]here appointments to administrative boards and commissions are made from lists submitted to" the Governor. To the circuit court, the application of this statute to appointments to governing boards of Kentucky's universities was "im-

mediately obvious" because "state-funded and administered universities are an arm of the state." KRS 12.010, the definitions section for Chapter 12, does not separately define "administrative boards", although "administrative body" is defined at paragraph (8) to include "any multi-member body in the executive branch of the state government, including but not limited to any board, council, commission, committee, authority or corporation," but does not include "branch," "section," "unit" or "office." Given the requirements of KRS 446.080 that "[a]ll statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature," and that "[a]ll words and phrases shall be construed according to the common and approved usage of language," we agree with the circuit court that the phrase "administrative boards and commissions" in KRS 12.070(3) includes the governing bodies of the state's universities, including that of Murray State University. We were cited to no case or statutory provision that would lead us to conclude otherwise, nor could we find any such provision.

■ As noted earlier, our conclusion that KRS 12.070(3) applies to the appointment of members to the Murray State Board of Regents leads to a further inquiry, because KRS 164.005 also applies to those appointments. The statutes appear to be in conflict because the language of KRS 164.005(5)(a) can be interpreted to require the Governor to make the appointment from the first list of nominees provided to him. The appellants take the position that the specific purpose of the statute, and its mandatory language, indicate that the legislature intended that KRS 164.005 preempt the Governor's option to reject lists granted earlier under KRS 12.070(3).

■ When confronted with the parties' competing positions on the rules of statutory construction in this case, the circuit court wryly observed that "[r]ules of statutory construction ... are like Hallmark© cards—there's one for every occasion." (Copyright symbol added). While it must be admitted that statutory construction is something less than an exact science, the rules serve an important function in helping courts determine legislative intent. We noted above the statutory requirement that all statutes are to be liberally construed with a view to promote their objects and carry out the intent of the legislature. KRS 446.080(1). It is a basic rule of construction that "[w]here there is an apparent conflict between statutes or sections thereof, it is the duty of the court to try to harmonize the interpretation of the law so as to give effect to both sections or statutes if possible." *Commonwealth v. Halsell,* 934 S.W.2d 552, 555 (Ky.1996), *quoting Ledford v. Faulkner,* 661 S.W.2d 475, 476 (Ky.1983). In the same vein, "[i]t is well settled that two or more acts dealing with the same subject matter must be construed in pari materia, and any apparent conflict between them must be reconciled, if possible, so as to give effect to both." *Sumpter v. Burchett,* 304 Ky. 858, 861, 202 S.W.2d 735, 736 (1947) (Internal citations omitted). Here, the construction urged by the Appellants requires that the first sentence of KRS 12.070(3) be given no effect. "It is presumed that the Legislature was cognizant of preexisting statutes at the time it enacted a later statute on the same subject matter." *Shewmaker v. Commonwealth,* 30 S.W.3d 807, 809 (Ky.App.2000) (Internal citation omitted). "Courts will also presume that where the Legislature intended a subsequent act to repeal a former one, it will so express itself as to leave no doubt as to its purpose." *Id.* Indeed, it is an elementary rule of statutory construction

that repeal of all or part of an existing statute by implication is disfavored. *Tipton v. Brown*, 277 Ky. 625, 126 S.W.2d 1067, 1071 (1939). As noted by Kentucky's highest Court:

> "This universal rule means that the courts will construe the acts if possible so that both shall be operative and effective if that can be done without contradiction or absurdity. If any part of the existing law can be reconciled or harmonized with the provisions of the new act it will not be deemed as having been repealed."

*Id., quoting Schultz v. Ohio County*, 226 Ky. 633, 11 S.W.2d 702, 704.

We agree with the circuit court that the most plausible reading of the two statutes is that urged by the Appellees, which gives effect to both. Under the facts of this case the Governor made the appointment from among "the nominees" submitted to him by the Board, albeit not from the first such list.

We considered the Appellants' contention that the circuit court's analysis ignored KRS 164.005(5)(c), which requires the Committee to make the appointment if the Governor fails to do so within sixty days. The argument is that the section is rendered meaningless by an interpretation permitting the Governor to reject lists of nominees. We disagree; in fact the argument is refuted by the facts of this case, wherein the Governor made the nomination from the third list submitted to him, within sixty days from the submission of the first list.

Although the Appellants argue that KRS 164.005 is the more specific statute, and cite the rule of statutory construction that specific statutes take precedence over general ones, we observe that as to the narrow issue of whether or not the Governor has the authority to reject tendered lists of nominees and require the submission of other lists, it could be said that the more specific statute is KRS 12.070(3). The crucial question is whether or not KRS 12.070(3) applies to the appointment of members to the governing bodies of universities. We conclude that it does.

The Order of the Franklin Circuit Court is affirmed.

THOMPSON, Judge, concurs.

WINE, Judge, dissents and files separate opinion.

WINE, Judge, dissenting:

Respectfully, I dissent. The dictates of KRS 164.005(5) are not ambiguous and clearly outline the responsibilities of the parties. It is also important to note that the constitutionality of KRS 164.005(5)(a) or (b) has not been challenged under §§ 27 or 28 of the Kentucky Constitution. KRS 164.005(5) deals specifically with a vacancy on the Board of Regents of certain Kentucky universities including Murray State University. The nominating committee shall submit three nominations to the Governor for each vacancy. KRS 164.005(5)(a). "The Governor *shall* select the appointees from among the nominees." KRS 164.005(5)(a) (emphasis added). If the Governor fails to act within sixty days, the appointment is made by the committee. KRS 164.005(5)(c).

Nothing in the record below suggests that any of the nominees were unqualified or that the Governor was attempting to strike a gender balance.[2] This portion of the statute was enacted in 1992 and makes

---

**2.** For some unknown reason, KRS 164.005(5)(a) is only concerned with maintaining a balance between the genders of persons serving as regents. Likewise, KRS 164.321, which dictates the composition of a board of regents, is concerned only with gender balance.

no reference to the ability of a Governor to refuse to make an appointment.

The Governor relied on KRS 12.070(3), initially enacted in 1962, the more general statute, which allows the Governor to reject a list of nominees for a board or commission and request a second list. This statute was subsequently amended in 1994 to emphasize the importance of minority representation on various boards and commissions. The Governor may go outside the list if seeking to appoint a minority so as to ensure proportionate representation. Again, there is nothing in the record before this Court to suggest the Governor was trying to ensure minority representation.

KRS 164.005(5) and KRS 12.070(3) are in conflict as to the question of whether a governor can reject a list of **qualified** nominees for an appointment to a board of regents. "The applicable rule of statutory construction is where there is both a specific statute and a general statute seemingly applicable to the same subject is that the specific statute controls." *Meyers v. Chapman Printing Co., Inc.,* 840 S.W.2d 814, 819 (Ky.1992). *See also Parts Depot, Inc. v. Beiswenger,* 170 S.W.3d 354, 360 (Ky.2005). "This is especially true where the special act is later in point of time." *Morton v. Auburndale Realty Co.,* 340 S.W.2d 445, 446 (Ky.1960), *citing Oppenheimer v. Commonwealth,* 305 Ky. 147, 202 S.W.2d 373 (1947) and *Shannon v. Burke,* 276 Ky. 773, 125 S.W.2d 238, 239 (1939). Even if there were no conflict, the later statute would control. *Shannon, supra,* at 239.

To the extent the Governor may reject a list of nominees in order to ensure racial and gender diversity and parity, I agree with the majority that KRS 12.070(3) and KRS 164.005(5) can be interpreted in tandem to achieve those goals. The intent of the General Assembly in formulating the nominating committee, as well as the nominating process, is obvious. KRS 164.005(2)(b) strives to insure the nominating committee is racially and gender diverse, representative of the political parties of the Commonwealth and free of potential conflicts, *vis-a-vis* other post-secondary entities. The nominating committee is required to submit to the Governor a list of three qualified individuals. KRS 164.005(5)(a). If a particular gender balance is necessary, only members of that sex shall be submitted for consideration. If racial diversity is sought, KRS 12.070 provides the appropriate remedy.

Because I believe the Governor exceeded the authority granted under KRS 12.070(3) and the clear mandate of KRS 164.005(5)(a) and (c), I would reverse the judgment of the Franklin Circuit Court and remand this matter with instructions that the Governor select a nominee from the first list of qualified applicants.